**GOMER v. ANDING et al.***
No. 1079.

Court of Appeal of Louisiana. First Circuit.
March 7, 1933.

---

*For opinion denying rehearing, see 147 So. 545.

D. L. Guilbeau, of Opelousas, for appellant.

Lewis & Lewis, of Opelousas, for appellees.

LE BLANC, Judge.

Allen A. Anding, Jr., son of Mrs. Allen A. Anding, while driving his mother's automobile, with her permission, on the night of July 3, 1931, with Miss Claire Ola Gomer as his guest, ran into the balustrade of a concrete bridge on Maple street in the town of Eunice. The accident resulted in serious injury to both occupants of the car.

Mrs. Anding, owner of the automobile; carried a policy of indemnity in the Union Indemnity Company, guaranteeing her against any loss or injury to a passenger in the car arising out of the negligent operation thereof by herself or any member of her family. Claiming that Allen Anding, Jr., son of the insured, was negligent and imprudent in driving the car on the night that she, as a passenger therein, was injured, Miss Gomer instituted this suit to recover damages in the sum of $10,000 against Mrs. Anding and the Union Indemnity Company, in solido.

It is not disputed that Miss Gomer was a guest of young Anding in the automobile, and that question is eliminated from the case.

Before any pleading was filed on the part of either defendant, plaintiff voluntarily dismissed her suit as against Mrs. Anding, and in a supplemental petition asked that Allen A. Anding, Jr., who, she alleged, under the terms of the policy of insurance and under the provisions of Act No. 55 of 1930, stood in the place and stead of the assured, be made party defendant in the suit, and that judgment be rendered against him and the Union Indemnity Company, jointly and severally, in the sum originally prayed for. Upon leave of court, this supplemental petition was filed and service thereof was accepted by all parties; acceptance by the Union Indemnity Company, however, being made with full reservation of all its rights.

Allen Anding, Jr., first objected to the supplemental and amended petition, and excepted thereto on the ground that the same was illegal and had improvidently issued. Union Indemnity Company at the same time filed an exception of no cause of action challenging the constitutionality of Act No. 55 of 1930, and also urging irregularity in the filing of the amended petition. The exceptions were overruled, and an answer on behalf of each defendant was then filed.

The answer on behalf of Allen Anding, Jr., admits in substance the allegations of the petition which set out the events preceding, as well as the time and place of the accident and the attending results. The charge of negligence on his part is denied, and it is averred that the accident took place because he was blinded, as was plaintiff also, by the lights of another automobile approaching the bridge from the opposite direction to the one in which they were going, and that, despite his attempt to stop his car, upon being so blinded, the collision took place before either he or the plaintiff realized the situation.

As a result of a trial of the case on the merits, the lower court awarded judgment in favor of the plaintiff against both defendants, jointly and severally, in the sum of $4,500. Both defendants have appealed, and plaintiff has answered the appeal asking that the judgment be increased to the amount originally demanded by her.

Taking up for consideration first the exception of no cause of action filed by the Union Indemnity Company, which, as has been already remarked, is based on the alleged unconstitutionality of Act No. 55 of 1930, we find that this same issue was very recently presented to this court in the case of Gager v. Teche Transfer Co. et al., 143 So. 62, in which the constitutionality of the law was upheld, and any extended remarks on the question at this time would be more or less a repetition of what was said in that case. Counsel for the insurance company evidently anticipated an adverse ruling on the question,

as in his brief he states that, "since filing this exception, we have learned that ·the statute has been held constitutional, and we take it that this phase of the case is therefore foreclosed to us." He does not present any further contention on the subject, and in fairness to him we deem it proper to state that from his remark we infer that he filed his exception before the decision in the Gager Case was handed down, otherwise he would not have again presented the question to the court.

■■■ The next question on behalf of the defendants is based on the alleged illegal and irregular procedure in making Allen A. Anding, Jr., party defendant by means of supplemental and amended petition. In support of his contention that this method of proceeding is illegal and improper, counsel relies on the decision in the case of Curacel v. Coulon, 2 Mart. (O. S.) 143. As a first consideration in disposing of this exception, we have to take into account the status of the pleadings at the time ·the exception was filed. Plaintiff had then merely filed her original petition to which no pleas at all had been presented by either of the defendants. Therefore no issue had as yet been joined and no rights had accrued to any of the parties. That much, therefore, was in favor of the plaintiff's right to file her supplemental petition, as it is well recognized that, until the defendant appears, the plaintiff may file as many supplemental petitions as he desires. Lehman Dry Goods Co. v. Lemoine, 129 La. 382, 56 So. 324. The next step the plaintiff took in this case was to voluntarily dismiss one of the defendants, Mrs. Allen A. Anding, from the suit. This she was at liberty to do upon paying the cost incurred up to that time. She then comes in by way of supplemental petition, and, on allegations to the effect that under the provisions of the policy Allen Anding, driver of the automobile at the time of the accident, stands in the place of the assured, and therefore Mrs. Anding, the assured, is an unnecessary party to the suit, asks that Allen Anding, Jr., be made party defendant with the insurer. In the case relied on by counsel for defendant there was an attempt made to amend the petition by striking out the name of Curacel, the plaintiff, and inserting therefor the name of Ganeson, and the court held that that could not be done because it would not be amending, but making, a new petition, and "consequently making a new suit." It is then very appropriately remarked that, if such proceeding could be allowed, "the names of both parties could be changed, consequently an entire new suit substituted." That, however, is not what the plaintiff sought to do in this case. For all that it mattered, Mrs. Anding might have remained as a party defendant and her presence in the suit regarded as unnecessary; mere surplusage, as it were. Plaintiff's purpose, therefore, was not to substitute another for her in an attempt to make a new suit, but only to make a new party defendant. That she had a right to do so is to be implied from the very decision relied on by counsel for defendants and cited above, for it is pertinently said therein: "It is true, parties are often added by leave of court, but this is very different from substituting a new plaintiff, in room of the original one."

The fact, moreover, that the party was added before issue was joined by any of the defendants strengthens the position of the plaintiff in this case.

We are of the opinion that the exception was properly overruled.

Coming now to a consideration of the merits of the case, we find that there is but little dispute as to the facts. Allen Anding, Jr., who lived in Opelousas with his mother, had several times before the accident called on Miss Gomer, who lived at Eunice. On July 3, 1931, he had engaged her to attend a dance with him at a place in Eunice known as "Abe's Palace." He obtained permission from his mother to use her Chevrolet automobile, and left in it to enjoy the pleasures of the evening. He called on Miss Gomer, and together they attended the dance. They enjoyed themselves until long after midnight, as it was some time between 1:30 and 2 o'clock of the morning, just before the dance was to stop, that they left the dance hall. They both say· that the night had been very hot and sultry, and, as they left for her home in the car, she suggested that they drive around a bit in order to cool off. She did not direct him over any particular street, and the round about way of their returning home was fully assented to by him, and he selected the route. He was familiar with the streets in Eunice, having several times taken Miss Gomer out for a ride before the night of the accident. He also knew of this bridge which he ran into.

■■■ The route taken finally led them into Main street, going south, and from that street into Maple street going west. Miss Gomer's testimony is that at this time he was going "terribly fast"; that he turned the corner rather fast, and she asked him to slow down. The bridge which he ran into is about three blocks west from the corner referred to, and her testimony is further to the effect that, when he entered Maple street, he must have been. going forty miles an hour. "He didn't slow down very much," she says. From the tire marks appearing in the grass along the south of right-hand side of Maple street, it would seem that the car left the gravel about one hundred feet from the bridge, and then ran headlong into the balustrade on the south ·side of the bridge. The impact must have been most violent, as the engine of the automobile had been driven

some twelve to sixteen inches out of place back to the front seat and up against Miss Gomer and Mr. Anding. The radiator and front axle were bent in by force of the blow to the extent where the front wheels of the car were permitted to become locked to the balustrade. These are physical facts which point very strongly to the fast rate of speed at which the car must have been traveling, and the fact also of the right-hand wheels having left the gravelled part of the street and skidded along in the grass, as it were, for a hundred feet or more before reaching the bridge, is an indication that young Anding did not have it under proper control as he reached the bridge. It is shown that the bridge is painted white and that there was an arc light some fifty feet from it, all of which made it plainly discernible at night. In addition to this, it might be said that young Anding was not unfamiliar with the conditions existing. All these facts and circumstances, taken into consideration, make out a prima facie case of negligence on the part of the driver of the automobile, and one in which the doctrine of res ipsa loquitur could properly be applied.

Res ipsa loquitur, translated literally, means "the thing (or act) speaks for itself."

It is a phrase used to express tersely a rule in the law of negligence to the effect that, where the fact of an accident exists and the attending circumstances are of themselves sufficient to justify an implication or inference of fault or negligence on the part of the defendant, making out a prima facie case as it were, the task then devolves upon the defendant to present an explanation to exculpate himself from the legal presumption that is thrown around him. It is not a shifting of the burden of proof, but the imposition of the duty of explaining that the accident and resulting injury was not due to his want of proper care. This duty arises from the fact that the agency or thing which caused the injury was under his control and management, and the happening was such as does not usually occur when due care has been exercised.

The doctrine is well recognized in all courts of the country, and has been frequently applied by the appellate courts of this state, as is amply shown in the review of decisions to be found in the case of Monkhouse v. Johns, from the Court of Appeal, Second Circuit, reported in 142 So. 347.

■ Now, in carrying the burden placed on him, what does the defendant in this case offer in the way of explanation to show that Miss Gomer's injury did not result from a want of proper care on his part? His answer contains an affirmative statement to the effect that he was blinded by the glare from the lights of an approaching automobile, but, on the trial of the case, he fails utterly to support the statement even by his own testimony. The following, from his examination in chief, is quoted from the record:

"Q. I want you to state to the Court how you account for colliding with the bridge as the result of which your car was wrecked and you and Miss Gomer were both seriously injured? A. I don't know exactly how it happened. My impression was I was blinded by a car light.

"Q. You were driving west on what is known as Maple Avenue? A. Yes.

"Q. What did you say about being blinded by car lights? A. I said that was my impression. I don't remember clearly what happened just before the accident occurred. I thought there was a car approaching at the time of the accident. * * *

"Q. You will not state to the Court whether or not a car did blind you? A. No, I can't do it. My impression was a car did blind me, but I am not positive about it."

And then, making it a clear case coming within the doctrine of res ipsa loquitur, we find the following question and answer in his testimony: "Q. I am going to ask you to state to the Court Mr. Anding, your explanation of how you happened to drive your car into the balustrade of this bridge? A. I can't explain it, I don't remember exactly how it happened."

Miss Gomer states that she has no recollection whatever of seeing a car approaching toward them, and a reliable witness whose testimony was accepted by the district judge, a lady who lived near the scene of the accident, says that she was awake at the moment, could see the bridge plainly, and that there was no other car besides that of Mr. Anding there at the time.

Mr. Anding does not deny that Miss Gomer told him that he was driving too fast, which may be said to have amounted to a sufficient protest on her part. Indeed, that issue is not raised, nor is it mentioned in brief of counsel for defendants. Besides, as a guest, she was entitled to a reasonable extent to rely on the proper care and management on the part of the one driving the automobile. Delaune v. Breaux, 18 La. App. 609, 135 So. 253.

We feel satisfied of the correctness of the judgment of the lower court in holding the defendant Anding liable, and with him, his indemnitor, Union Indemnity Company.

■ Regarding the quantum of damages, it might be said that the gravity of Miss Gomer's injuries is not seriously disputed, nor are the claims made for doctor's and hospital bills and for loss of salary which she should and could have earned as stenographer and bookkeeper, she having been employed as such at the time she was injured, contested. It would serve no useful purpose to go into any detail about the injuries

she sustained. Suffice it to say that she remained in a comatose and semicomatose condition for several days following the accident, and was attended by several physicians, all of whom testify as to the various injuries and the very probable permanent disability resulting from a fracture of one of the bones around the eye socket. The district judge, who no doubt was in a better position than are we to appraise the condition, fixed her total damages at $4,500. We know of no reason why the award should be changed one way or the other.

Judgment affirmed.