**GUILLORY v. HORECKY et al.**

No. 1467.

Court of Appeal of Louisiana. First Circuit.

June 14, 1935.

Lewis & Lewis, of Opelousas, for appellant.

Carmouche & Carmouche, of Crowley, for appellees.

ELLIOTT, Judge.

Olive Guillory brought suit against John Horecky and Maryland Casualty Company for $10,000 in solido claimed as damages on account of the death of her daughter, Regina Guillory, who at the time of her death was a minor.

She alleges that her daughter was struck down and killed on April 7, 1933, as the result of the negligence of Roy Malbrough, an employee of said Horecky, while driving a motortruck, the property of his said employer; that said Malbrough was authorized to use the truck he was driving at the time; that said Horecky carried insurance protection with Maryland Casualty Company against loss or damage in the use of said truck to the person or property of others.

Defendants urged against her petition the exception of no cause of action. The plaintiff amended her petition, upon which the exception appears to have passed out of the case.

Defendants Horecky and Maryland Casualty Company, answering her petition, deny that said Malbrough was driving in the employ of, or on a mission for, said Horecky at the time plaintiff's daughter was killed, but it is admitted that Horecky was the owner of the truck.

They denied plaintiff's charge of negligence in driving on the part of said Malbrough. They alleged that plaintiff's daughter was solely at fault, and acted without any regard or caution for her person or life in running against said truck.

There was judgment rejecting plaintiff's demand. The plaintiff has appealed.

The evidence shows that plaintiff was married to Ben Guillory and that Regina was born of her marriage, but she had not lived with her husband for 8 years previous to the trial. The evidence does not show Ben Guillory's whereabouts, nor whether he is still living. There is no evidence nor claim that the parties have been divorced; but his absence appears, so we conclude that plaintiff's action is supported by a provision in the Civil Code, art. 221 (amended Act No. 197 of 1924). There is no contention as to her right to prosecute the present suit and to recover, if warranted by the evidence.

The plaintiff urges that defendant's answer contains a plea of contributory negligence not alternatively alleged; that their pleading therefore admits the negligence of the defendants, and defendants thereby take on themselves the burden of proof as to the negligence of her daughter in bringing about her own death. We copy a portion of the answer as follows: "That the injuries sustained by said minor were occasioned solely because of the negligent and careless and wrongful acts of said minor, who acted without any regard or caution for her life or person; all of which will be more fully shown hereafter."

Defendants first answered the thirteen averments in plaintiff's petition, and then, further answering, re-aver and set out in detail their previous denials on the subject of Malbrough's authorized use of the truck at the time plaintiff's daughter was killed, and among other matters state "that just as said truck reached a point almost parallel to said children, one of the

said children tagged the child that was later injured and caused the child that was later injured to dart and suddenly start across the roadway into the path of the oncoming truck. That the said Malbrough cut or caused the said truck to swerve to the left and applied the brakes in an effort to avoid hitting or injuring the said children; that the front end of the truck missed the child but that she ran into the side of the trailer of the truck."

The argument that a plea by a defendant in a suit of this kind that the plaintiff is contributorily negligent, not alternatively urged, admits his own negligence, and takes upon himself the burden of proof to show the alleged negligence of the plaintiff, is a correct legal position, but in this instance the alleged negligence of plaintiff's daughter in acting without caution or regard for her person or life in running into defendant's truck does not justify the conclusion that defendant did anything contributing to bring about what the daughter is said to have done; consequently the averment is not one of contributory negligence, but it is an exonerating defense affirmatively advanced, as to which the burden of proof is upon the party pleading it. Greenleaf, Subject, Burden of Proof, c. 3, § 74. This matter will be referred to again in a later part of this opinion.

■ Defendants contend that Roy Malbrough, driver of the truck, was not employed by John Horecky as a truck driver; that in driving the truck at the time in question he was acting without authority and against the orders of said Horecky, and was not bent on any mission for his employer; that defendants are therefore not liable for his acts while driving.

John Horecky, Roy Horecky, and Roy Malbrough all testify that he (Malbrough) was a warehouse employee, not employed to drive trucks, and that he had no authority to be driving the truck in question. The evidence shows that Malbrough was driving himself to dinner, and the witnesses above mentioned testify that he had been told not to drive the truck to dinner. Malbrough testifies that he slipped the truck out and was driving it at the time without the knowledge or consent and against the authority of his employer. Considerable testimony was taken on this subject. We are satisfied that Malbrough, in getting in this truck and driving himself to dinner, was acting with the tacit consent and implied authority of John Horecky.

We will mention one circumstance; and there are others:

John Horecky testified that, when he learned that Malbrough, while driving the truck, had struck and killed this child, he was so angry that he discharged him, but admitted that about a week afterwards he hired him back and had him in his employ at the time of the trial. He was asked the question: "Q. Why did you take him back? A. Because I found out that really this accident was purely accidental."

His answer is equivalent to saying that he got angry and discharged this negro employee because, upon hearing of what had happened, he at first supposed that the negro was at fault for striking the little girl, but, upon learning that it was accidental, no reason existed for discharging him, consequently he hired him back. The answer indicates that Horecky had made an investigation and reached the conclusion that the killing was the result of an accident, and therefore the taking of the truck and driving it for the purpose of going to dinner was no just ground for a discharge, as the negro, in taking the truck and driving himself to dinner, was acting within the authority of his service. We also take into account the fact that Roy Malbrough had often before the time in question driven a truck in the service of John Horecky delivering merchandise, etc. We find that Roy Malbrough, in driving this truck at the time in question, was driving with the authority and in the service of John Horecky. The next question is whether the driver was negligent and at fault in causing the death of plaintiff's daughter, or does the evidence show that plaintiff's daughter suddenly ran into the rear end of the trailer attached to the Horecky truck, and in that way, solely as the result of her own fault and negligence, and unavoidably on defendant's part, brought about her own death?

■ Plaintiff contends that the truck was being driven recklessly at excessive speed and without proper caution on the main street of the town of Church Point near two schoolhouses, where children were to be expected at the time. That defendant's driver was going west and saw the children coming east in the street or road meeting him, and that he endeavored to pass too near them and drove so carelessly in that respect that he caused the

death of her child. These questions are close, and we do not reach a conclusion without some hesitation. The street or road was straight at that place; it was about 12 o'clock m.; the day was clear and vision unobstructed. Plaintiff's daughter was 11 years of age; she had been to school; and, accompanied by other children, was on her way back home for lunch. Malbrough admits that he saw the children coming near in the road meeting him. He was driving on the right side, going west, and the children were walking on the same side; that is, on their left side, going east. He says that as he got near them he sounded his horn; that plaintiff's daughter, engaged in play, suddenly ran into and struck the rear end of the trailer at the end of his truck. His statement is substantially as follows:

"Q. Can you tell the court just how this accident happened? A. I was going to dinner and they were coming this way on my right side, and I got right close to them. Before I got close to them I blew my horn; they were looking behind and the one that got hit, just hit on the other and started running right across the road and turned her back on the truck.

"Q. Did you see those children coming towards you on the road? A. Yes, Sir.

"Q. Were they walking or running? A. Walking.

"Q. When you and the girls nearly met, did any of those girls run? A. Yes, Sir; she was in the back; she hit on the other and run into the truck.

"Q. Who do you mean? A. The little Guillory girl.

"Q. How far from the ditch was your truck? A. I was about five feet from the ditch.

"Q. And how far were they from the ditch? A. They was about 2½ feet from the ditch.

"Q. When your truck got even with those girls the Guillory girl tagged one of those other girls and ran into your truck? A. Yes Sir.

"Q. Did you do anything to avoid hitting her? A. Yes Sir, I cut my truck the other way, but she ran into the back and I stopped my truck and went and picked her up.

"Q. Was the front of your truck even with those girls when she tagged her? A. Almost, yes Sir.

"Q. Your truck was how far from the ditch at that point? A. I was about in the middle of the road.

"Q. Could you have run into or over any of those girls from where your truck was? A. No, Sir.

"Q. How fast were you driving? A. About ten miles an hour."

This statement is corroborated by some witnesses, but there is also testimony stating the facts concerning the conduct of plaintiff's daughter and that of the driver, at the time of the impact, quite differently. The evidence shows that the children were playing tag, and the truck driver saw them playing and running in his direction and looking behind them as he approached. The fact that his truck was drawing a trailer called for additional care. The situation called at once, on his part, for great care. He should have gotten down to very moderate speed and held his truck well in hand, ready to stop or swerve as might be necessary to avoid the result of an impulsive act on the part of the children. As for the speed at which the truck was being driven, witnesses looking at it at the time of the accident differ as to its speed. Some of them estimate its speed at 10 or 15 miles an hour, another at 15 or 20, while another at 20 or 25 miles an hour. It is our conclusion that it likely was being driven at the time close to 20 or 25 miles an hour. It must have been going that fast, else the child could have hardly been knocked down, fracturing the back of her skull as the result of impact with it, to the extent that it caused her death a few hours later. The place where the accident occurred was not in a thickly settled part of Church Point, but on the outskirts of the town, and there appears to have been no traffic at all on the street except the Horecky truck. We are not satisfied that the speed of the truck was excessively fast, to the extent that it must be deemed to have been negligent, rendering the employer liable in damages, nor that it was driven so close to the children that Horecky is responsible in damages on that account. The street was also a highway gravelled to the width of about 30 feet. There were no sidewalks; consequently pedestrians walked on the road, usually keeping on one side. There was nothing to prevent the truck driver from seeing the children or the children from seeing the truck. Plaintiff's daughter was old enough to appreciate the danger from

motor vehicles which attended walking on the highway. She was accompanied by a couple of schoolgirls about her age, and also by a schoolgirl named Anna, older than she was. The evidence shows that Anna was present and evidently saw this accident; yet neither side called her as a witness and neither offers any explanation as to the reason it was not done.

Plaintiff's daughter had the right to walk in this road, but she was bound to see this truck coming as it got near. The truck presumably made about the same noise that trucks usually make on gravelled roads, and this noise as it came near should have been heard, as well as its horn, if sounded. Two witnesses say that they did not hear it nor its horn.

One of these witnesses was Emma Meche, 11 years of age. She testified that she was looking at Regina when she was struck and that the truck struck Regina. She says that Regina, at the time of being struck, was on the side of the road, and which we understand was their left side in the direction they were going; that Regina was standing still on the side of the road about 2 feet from the ditch, looking back, when struck by the truck. Speaking of Regina, she says: "She just tagged a little girl and turned her head and the truck bumped her." Using substantially the same language, she repeated this statement four or five times, but she was the only witness who claimed that Regina was standing still looking behind her at the time she was struck.

The other witness relied on by the plaintiff was Voorhies Nero, a boy 14 years old, and not one of the school children.

Voorhies Nero testified that he was standing near by, but on the opposite side of the street, looking at the children and the truck at the time Regina was killed. He says the children were walking in the street about 3 feet from the ditch, and that the truck seemed to be about 4 feet from the ditch; that, if the truck horn sounded before the little girl was struck, he did not hear it. We quote a part of his testimony as follows:

"Q. Did the truck at any time swerve to its left just before the accident happened? A. He turned to the left to try not to hit her.

"Q. How far from the girl was the truck when he swerved to his left? A. I don't know exactly.

"Q. Was he close or was he far away? A. He wasn't so close.

"Q. Did the back end of the truck swerve or did it keep on straight? A. It kinder slapped around.

"Q. What part of the truck hit the little girl? A. The back end.

"Q. You mean the trailer? A. Yes, Sir. * * *

"Q. How far was Regina Guillory from the edge of the ditch when the back end of the truck hit her? A. About three feet from the ditch. * * *

"Q. Did you notice the little Guillory girl make any running movement before she was struck? A. She was running.

"Q. Along the side of the ditch? A. Yes, Sir.

"Q. Did she ever run any further away from the ditch than three feet? A. No, Sir.

"Q. You are sure about that? A. Yes, Sir."

In subsequent statements he says that, as the truck came near, the little girls were running one behind the other; that he saw the little Guillory girl tag one of the others and run toward the truck as if she wanted to run into it, and finally he says:

"Q. Ran towards the center of the roadway? A. Yes, Sir.

"Q. Do you mean that she ran away from the side of the ditch towards the center of the road into the truck? A. Yes, Sir. * * *

"Q. When she ran toward the center of the road, she was not looking where she was going? A. No, Sir.

"Q. She had her head turned from the middle of the road? A. Yes, Sir."

Voorhies Nero contradicts Emma Meche in saying that the Guillory girl was standing still when struck. He says in one place that she was running along the side of the ditch toward the truck when it struck her, but in another place he contradicts himself, saying that she ran toward the center of the road into the truck and was not looking where she was going.

Freddie Benoit, witness for defendant, 19 years of age, testified that he was on the road near the accident when it happened and saw what took place. We quote a part of his testimony as follows:

"Q. Were you on the road near the accident when it happened? A. Yes, Sir.

"Q. Did you see the accident? A. Yes, Sir.

"Q. Did you see the little girl that got killed? A. Yes, Sir.

"Q. Did you see the truck? A. Yes, Sir.

"Q. Will you tell us just what you saw? A. I was going home to dinner and the truck was coming and I heard the truck blow and I looked in the back and those little girls was coming; they had a house on the side of the road and they was right near the house and two of the little girls would go into the house and the other little girl would keep on and the little girl tagged and left out and was backing off to the side and by that time the truck was coming and the driver jerked the truck and missed her in front and she ran into the back of the truck.

"Q. How far were you from the place where the little girl got struck when the truck passed you? A. I don't know.

"Q. Could you say about how far? A. I was no further than from here to that gate.

"Q. Did the truck have to pass you to get to the little girl or did the little girl walk into the truck before the truck came to you? A. It was right even with me.

"Q. It didn't have to pass you to get to the little girl? A. No, Sir. * * *

"Q. Just before the accident, did you hear anything at all? A. I heard him blow the horn.

"Q. Did you see the little girl that was hurt just before the accident? A. Yes, Sir.

"Q. Just before she tagged one of these little girls, how far from the ditch was she, about? A. About three feet.

"Q. What did she do after she tagged one of the girls? A. She left, coming out running.

"Q. Did she run toward Church Point or the center of the road? A. Toward the center of the road.

"Q. How fast was that truck going? A. About 10 or 15 miles an hour.

"Q. Was the truck way on the side of the road where the little girl was? A. It was about in the middle of the road.

"Q. Do you remember when the driver of the truck turned to the left? A. Yes, Sir.

"Q. Did the little girl do anything at that time? A. She was running into the front of the truck and he done that and missed her in front and she ran into the back of the truck."

The testimony of this witness corroborates the truck driver and, if true, supports holding that the accident was unavoidable.

According to the witness Benoit, Regina suddenly left the side of the road, running, and ran into the trailer out about the middle of the road, and the road was about 30 feet wide.

W. H. Harmon, chief of police in the town of Church Point, says that the truck in question passed him about three blocks from the accident going about 10 or 15 miles an hour; that, upon hearing what had happened, he immediately proceeded to the place and saw the marks on the gravel made by the wheels of the truck and saw blood on the ground where the child had fallen. He says that the blood was about 6 feet from the ditch; that the marks of the wheels showed that the truck was being driven about 4 feet from the right side of the road, going west, but 12 or 15 feet before he got to the blood spot he could see by the wheel marks that the truck had swerved off, meaning toward the center of the road, but he does not say how far it had swerved at the time of contact with the child; that he interviewed all the eyewitnesses right after the accident, and they all told him that Regina had tagged and ran across the road. Statements made to Mr. Harmon right after the accident are more trustworthy than those made 6 or 7 months afterwards. His testimony supports the contention of the defense that the little girl suddenly ran toward the front of the truck; the front was swerved so as to miss her, but she kept running until she either ran into and struck, or was struck by, the rear end of the trailer.

A statement contained in the judgment appealed from must be taken into account. It says: "The court being of the opinion that the death of plaintiff's child, Regina Guillory, was the result of the negligence of the said Regina Guillory in leaving her place of safety and running in the way of the truck that killed her."

It is our conclusion that plaintiff's charge of negligence, recklessness, and fault in driving, against defendant's driver, is not established by a preponderance of the testimony on the subject, and that the evidence, instead, supports the defense that plaintiff's daughter was solely at fault and lost her life as the result of an acci-

dent unavoidable on the part of defendant Horecky's driver.

The evidence shows that plaintiff's daughter was killed as the result of the fracture of her skull on the back of the head. If the truck struck her on the back of the head, her back was toward it when struck, but we are satisfied that she ran toward the truck. By running into it face forward, the impact of the forward moving truck knocked her backward toward the side of the road from whence she had run, and the back of her head struck the gravel, causing the injury which resulted in her death five or six hours afterwards.

The present case is one in which the lower judge could better estimate the credit due to the witnesses than we can, and his conclusion should not be overruled, unless found to be manifestly erroneous. The evidence, in our opinion, bears out the conclusion of the district judge.

Judgment affirmed.