## GUILLORY v. HORECKY et al.

### No. 1536.

Court of Appeal of Louisiana. First Circuit.

Dec. 31, 1935.

For former opinion, see 162 So. 89.

Lewis & Lewis, of Opelousas, for appellant.

Emile A. Carmouche, of Lake Charles, for appellees.

LE BLANC, Judge.

The earnest manner in which counsel for the plaintiff herein presented her application for rehearing prompted the court to reopen this case for argument and give it further consideration. After going over the record again in connection with the many points urged by counsel, a majority of the court have concluded that we should abide by our original opinion and decree and submit our reasons as follows:

One of the grounds of alleged error in that opinion is that as the death of plaintiff's daughter is admitted to have

come about as a result of the operation of an agency or instrumentality in the hands of the employee and agent of the defendant Horecky, the doctrine of res ipsa loquitur applied, and we should have declared the said defendant's responsibility as a consequence. The case of Gomer v. Anding (La.App.) 146 So. 704, is cited as authority on this point. In that case, this court attempted to state what it understood to be the meaning and import of that doctrine. There was no explanation given as to how the accident had happened, and the attending circumstances were of themselves sufficient to justify an implication or inference of negligence or fault on the part of the defendant. From the fact that the agency or instrumentality which caused the plaintiff's injury was under the control and management of the defendant, and the happening was such as does not usually occur when due care has been exercised, we held the defendant to the duty of explaining, under the doctrine as announced. The defendant, having been unable to give any explanation whatever, we then applied the rule and held him liable. But in this case, explanations as to how·the accident happened were offered, and the surrounding facts and circumstances of themselves were not sufficient to raise the presumption of negligence or fault on the part of the driver of the truck. The defendant did produce evidence to show how the accident had happened, and the court did not have to rely on the fact of an unexplained happening. We remain convinced that the doctrine of res ipsa loquitur does not apply.

▇ Another alleged error is that defendant's liability should be presumed from the fact that Roy Malbrough, the employee who was driving the truck at the time of the accident, had no license as chauffeur or operator, as required by Act No. 21 of 1932, title 1, § 1, par. (x), and title 6, § 12, pars. (a) and (e).

The meaning of the term "chauffeur," as used in the act, is explained in title 6, § 12, par. (e). It is thereby limited to those employed primarily and principally in the use or operation of motor vehicles on the streets, public roads, highways, and bridges of this state. We quote therefrom as follows: "The provisions and requirements of this section of this Act, Title VI, Section 12, paragraphs (a), (b), (c), (d) shall apply to every individual, whether an exclusive and personal chauffeur or other person, who is employed, primarily and principally in the use or operation of a motor vehicle upon the streets, public roads, highways or bridges in this State, whether used or operated as or by a motor carrier or not and the performance of other duties or services when not so engaged shall not preclude the application hereof."

In order to create the status of chauffeur under the act, the statute requires employment as stated. Malbrough was not so employed. His only employment at the time in question was to unload ·freight in defendant Horecky's warehouse, and in doing warehouse work exclusively. On the occasion of this accident, he had worked in the warehouse until dinner time. Seeing one of the defendant's trucks standing near by, he got into it without saying anything to anybody, and started driving himself home to dinner, and on his way, and before reaching there, the accident happened. He was not hired to drive the truck, was paid nothing for driving it, and a chauffeur's license was not necessary to enable him to drive home to dinner.

▇ It is stated in the original opinion that plaintiff's daughter was killed as a result of the fracture of her skull on the back of her head. It is now claimed that our statement to that effect is erroneous, and that the evidence shows that the injury which she received was on the top of the head. We are referred to the testimony of Dr. Bailey on this point.

Dr. Bailey at first said that plaintiff's daughter had been struck on the top of the head, but he was then asked: "Q. What portion of the skull would you call that? A. The dome of the skull, a little back of the center." This answer by him leaves the matter of the precise place of the injury somewhat in doubt, as far as his testimony is concerned. He did not see the injured girl but once; he saw that the injury was to the skull, a little back of the center of the dome, and, when called on to testify some eight months later, answers as we have quoted him.

On this point, we took as a fact the positive statement of the plaintiff herself, as appears from her answer to the question: "Q. Where was she struck? A. On the back of the head."

The plaintiff doubtless looked closely to see where her daughter was hurt. When she says that the injury was on the back of the head, she refers to that part of the head which is commonly spoken of as

such. We accepted her statement in that regard as true, and claim that it was not error to accept as true, on this point, a fact testified to by the plaintiff herself.

■ Our opinion further states (162 So. 89, 95): "If the truck struck her on the back of the head, her back was toward it when struck, but we are satisfied that she ran toward the truck. By running into it face forward, the impact of the forward moving truck knocked her backward toward the side of the road from whence she had run, and the back of her head struck the gravel, causing the injury which resulted in her death five or six hours afterwards."

It is now claimed that this statement is an erroneous conclusion from the undisputed facts, and it is argued that if the girl had been struck face forward her face would have received and shown marks of injury; that the only injury found was on the top of her head; that defendants do not contend that the injury to the head was caused otherwise than by contact with some part of the trailer; that it was the theory of defendants, in the examination of witnesses, that Regina backed into the moving truck and was struck in the back of her head by the moving truck.

Children, playing the game of tag, run after getting tagged. To run fast, one must run face forward. To run backward, the child necessarily moves slower and gets caught. On this point, the testimony of Roy Malbrough, the driver, is: "I blew my horn; they were looking behind and the one that got hit, just hit on the other and started running right across the road and turned her back on the truck." The testimony of Freddie Benoit, quoted at length in the original opinion, strongly corroborates this statement. It is unnecessary for us to repeat here what he said.

Emma Meche says that the girl Regina was standing still with her back to the truck when struck. But to show that value of her evidence, we quote her further.

"Q. At the time Regina was struck where was the other little girl? A. She was with us.

"Q. Who did she go to? A. Anna was holding her and she told us to wait for her and we told her, yes, and she tagged her and run.

"Q. Where did she run? A. She just stayed on the side and she turned her head and then the truck bumped her."

We understand her to mean by this, that Regina, after tagging Anna, ran in some direction, turned her head, and as she did so the truck bumped her. But when asked, "where did she run?" she contradicts herself by saying that "she just stayed on the side of the road" and turned her head.

Mr. Harmon, the chief of police, states that Emma Meche was included among those he interviewed after the accident, and that she told him, as did the others, that the injured girl had "tagged and *ran* across the road."

Voorhies Nero, 15 years old, who was called as a witness by the plaintiff, testified that he was standing on the opposite side of the street, but was looking at the accident when it happened. He appears to be as reliable as Emma Meche, and he stated definitely that Regina was not only running when she was struck, but that she ran as if she wanted to run into the truck; that the driver jerked and missed her, and she ran into the back of the truck; the truck at that time being nearly in the middle of the road. He says that she was not looking where she was going; that she had her head turned from the middle of the road. We gather from his testimony that she was running forward with her head so turned that she was looking behind her. If all of this testimony is to be believed, the case has been properly decided.

We agree with plaintiff that if Regina's face struck against the truck, there should in all probability have resulted some mark or injury on her face; but on the other hand, if the back of her head was struck by the truck, it seems equally as plausible that the blow would have thrown her face downward on the gravel, and she would have shown marks on her face just the same.

■ Another alleged error is that the opinion fails to refer to that part of the testimony of Mr. Harmon in which he said that he had examined the truck and found a spot of blood about the size of a finger nail on the sill of the axle at the rear end of the trailer. A witness who had measured its height testified that this sill was 3⅓ feet above the ground. In the absence of any explanation on the subject, we take it that this sill does not rest on the axle, but is above it, and supports the frame on which rests the body of the vehicle, leaving the axle free to revolve. As for the blood spot, in the absence of explanation

to the contrary, we take it that it was on the inside face of the sill, and less than 3⅓ feet above the ground.

It is contended that this blood spot on the sill represents the place where the injured girl's head struck. The blood spot was considered in acting on the appeal, but it did not seem to us to prove anything against the defendants. It does not establish as a fact that the girl's head struck that particular spot; the blood could have flown there as a result of an impact elsewhere. But this only leads us into speculation and suppositions, and these do not relieve the negligence of Regina, old enough to be charged with the duty of observing ordinary and due care; nor does it establish the negligence of the driver of the truck, or that he had the last clear chance to avoid what took place and did not avail himself of it. The decided preponderance of the evidence is that Regina was running toward the front of the truck which swerved and missed her, and that she kept on running, looking behind, until she impacted with the rear end of the trailer, and was thereby knocked to the ground. It is stated on rehearing that the trailer was 40 feet long, but the note of testimony contains an admission that the truck and semitrailer combined was between 20 and 22 feet in length. It follows from this that the girl could not have run but a very few feet after the front end of the truck had swerved to miss her, and as the end of the trailer came forward, with her running toward it, it may be safely inferred that the impact was almost instantaneous.

It is claimed that error exists in the opinion because the negligence of Malbrough, the truck driver, appears under the facts stated in the opinion itself. We differ with counsel as to this matter, and hold otherwise.

■■ Numerous cases are cited in which it was held that a person driving an automobile, who upon seeing children of tender years standing or playing on a road or street, was negligent for not stopping and taking every possible care, and this because of a child's well-known impulsive habit in suddenly jumping up and running, without appreciating danger. We do not consider our opinion as in the least departing from the principle on which those decisions are based. The difference is that the girl in this case was old enough to appreciate danger and to understand the ordinary care

that should be observed from traffic on the road. She must be charged with having seen what she was bound to see if she was the least bit observant, and bound to know the danger of suddenly thrusting herself in the path of an on-coming automobile right at hand. The driver's conduct in cases like this must be judged according to how close he was to the children when they commenced to play, and the time and opportunity he had to appreciate the danger resulting from their actions. We have carefully reviewed the case on this most important point, and again conclude that the unfortunate girl's action was so sudden and unexpected that the accident was unavoidable. Under our finding of facts, we do not think that the doctrine of last clear chance, as invoked by the plaintiff, applies.

Satisfied that the case was correctly decided in the lower court and on the original hearing in this court, our original judgment is hereby reinstated and made final.

DORE, Judge (dissenting).

Since this case is now before us on rehearing, and it appears from the exhaustive judgment originally rendered by this court much time and study have been given to the case, I have again read every word of the testimony offered on behalf of the plaintiff and the defendants, and have also carefully read and studied every decision and authority cited by counsel for both sides. I have come to the conclusion that judgment should be rendered in this case in favor of the plaintiff and against the defendants.

I am brought to this conclusion not only by what is undoubtedly the controlling jurisprudence on the question of the care and caution which should be exercised by one driving an automobile or truck on the public thoroughfares, and especially in approaching a band of children playing and frolicking on the roadway, but by the testimony given by the driver of the truck himself on direct and cross examination. Aside from these considerations of fact, the law questions are in favor of the plaintiff. Of course, the question of contributory negligence on the part of the deceased child was eliminated by the trial judge and must be eliminated in our consideration of the case, because no special plea was urged or set forth to this effect by the defendants; the plaintiff averring that the sole and only proximate cause of the accident was the negligence of the driver; defend-

,ant, denying the same, offers the affirmative defense that the acts or actions of plaintiff's child were the sole or proximate cause of the same.

It will be remembered that the organ of this court, in stating the contentions of the plaintiff and appellant as to the negligence of the truck driver, expressed himself some doubt as to his conclusions on the questions of fact in this case, for he said: "These questions are close and we do not reach a conclusion without some hesitation."

It is plain, therefore, to me that we did not fully appreciate and apply the undisputed facts in this case, taken in connection with the law as announced by the Supreme Court and the Court of Appeal, and in their latest opinions. I am forced to the conclusion that the sole and only proximate cause of the death of this child was not so much the affirmative negligence of the truck driver, but was his lack of care and caution in meeting a situation which was clearly apparent to him. There can be no dispute that the testimony established the following facts: The truck driver was a native of the town of Church Point, and lived in the ·immediate neighborhood of two schools. He knew that it was the custom and habit of children to come down the Main street of Church Point at the very time he was going home to dinner. The road was straight, wide, and graveled, and there was no vehicle of any kind approaching him from the front or the rear. The ·day was clear. He saw this band of children coming down the road in his direction, playing, and he saw that they were on his right side of the road. He knew that all pedestrians used the road, as there were no sidewalks. He admits that he saw these children over a block away, maybe more, and that he only blew his horn "a good piece from them." He said "it was a block or maybe more." The speed of his car when he reached these children is stated by us in the original opinion to have been "close to 20 or 25 miles an hour," and Judge Elliott also correctly held from the evidence: "The evidence shows that the children were playing tag; the truck driver saw them playing and running in his direction and looked behind them as he approached. The fact that his truck was drawing a trailer called for additional care. The situation called at once, on his part, for great care. He should have gotten down to very moderate speed and held his truck well in hand, ready to stop or swerve as might be necessary to avoid the result of impulsive act on the part of the children."

This correct statement and finding of this court, taken in connection with the further undisputed facts in the record, clearly convicted the truck driver of great negligence, and places upon him the sole and only proximate cause of the injuries which resulted in the death of the child. Here are my reasons for so stating:

In the first place, the truck driver never made any movement or motion whatever to arrest the speed of his car or to veer it to the left of the wide highway, or hold it under that perfect control which he should have exercised under the circumstances which he knew and saw. The testimony of the city marshal, who testified on behalf of the defendants in this case, and who seemed to have been very active in making observations immediately after the accident, stated that the wheels of the truck were plainly marked in the road, and that they were about 4 feet from the edge of the ditch on the driver's right-hand side, the body of the truck must have been protruded some inches beyond the wheels, perhaps one foot, and this would have brought the body of the truck to about 3 feet from the edge of the ditch on the same side that the children . were approaching, playing. This witness . further says that the tracks plainly showed that the driver only veered away from that distance from the edge of the ditch within about 15 feet of where the child was struck and where he found the blood spots, and where they showed him where the child was struck. The driver of the truck says that he thought the children were going to stay on the ditch bank, but in view of the fact that he admits he saw them playing, he had no right to assume that they were going to hug the right side of the ditch bank as he passed. Now, he says that he never took any care or caution or made any motion whatever to avoid striking these children until he was practically upon them, and that he suddenly swung the cab of his truck sharply to the left to the greatest extent that he could, and yet in another place he states that when the child started to back into the truck the child was even with his cab, but had he continued in his path, he would have passed by these children of tender years only a foot or two feet from them. Under all the facts in this case, and particularly those elicited from the lips of the defendant himself, taken in con-

nection with the physical condition, we properly held in the original opinion precisely what duty was placed upon the driver in order to avoid killing this child. We could have gone further and stated that, upon all highways and streets at or near schools, there are signs reading "We love our children, drive cautiously." But we decided that the child had suddenly run into the truck face forward, and therefore her act could not have been anticipated by the driver, and that he was not guilty of negligence. I cannot now agree to this conclusion. Even if we assume that the majority of the court is correct that the child ran into the truck, but in which assumption I think we erred, such fact would not release the driver from his great negligence in approaching these children under the circumstances and in the manner indicated in the original opinion. The driver had no right to think or assume that these children would seek a place of safety against the on-coming of such dangerous thing as a high-powered truck, and he had no right to assume that they would not even run into the street and into the path of the truck. He had ample space on his left; the gravel portion of the road being 26 feet. These things he did assume, and he took his chances in violation of every rule of common sense and caution.

The law applicable to this case is universal and cannot be disputed, and it will be only necessary for me to refer to a few decisions of this court. In the case of Brown v. Wade, decided by the Second Circuit, 145 So. 790, 792, we find general principles which are applicable here:

"When the operator of an automobile discovers the presence of small children on the roadside, ahead of him, it is his duty to travel at such a rate of speed, and bring his vehicle under such control, that an accident will be averted, regardless of the unexpected and unforeseen movement of any of the children. He has not the right to assume that a child, especially one of tender years, will exercise discretion needed to protect it from the dangers of rapid automobile traffic.

"We are not now dealing with a case, as often happens, where a child suddenly emerges from hiding, or from behind an obstruction to vision, and precipitates itself in front of a moving vehicle, thereby creating a sudden emergency. We are dealing with a case wherein the defendant admits that, after seeing the small child, less than four years old, running towards the road and then turning up the road, still running in the direction the car is going, he took little or no precaution to avoid what could or would happen should that child, in the exercise of its childish indiscretion, seek to resume its original course by attempting to cross the road. Under these conditions, it is immaterial whether the car was running sixty miles per hour or thirty miles per hour. The accident happened and defendant contends his speed was not over thirty miles per hour. Regardless of the rate of speed, he was unable to avert an accident which he knew, or should have known, would happen if the child he saw in front of him should suddenly change its line of travel to the left. The action of the child should have indicated to the defendant that its intention, when it ran to the highway and turned up, was to cross over to the tenant house a short distance away—its subsequent action proved this intention. He should have brought his knowledge of the nature and disposition of children of this age to bear, and governed himself accordingly. Defendant had ample opportunity, even from his own appreciation of the situation, to have so manipulated his car as to make it impossible to collide with plaintiff's child.

"Berry on Automobiles (6th Ed.) p. 435, under the title Injuries to Children, lays down the general principle applicable, we think, to a case of this character, viz.:

" 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them, must calculate upon this and take precaution accordingly.' "

And again I point to a lately decided case by the Orleans appellate court, perhaps the last one on this subject. It is the case of Peperone v. Lee, 160 So. 467. That was the case where a child of tender years was with its mother who started across the street in response to a call from its mother, when he was struck by the defendant's automobile and killed. The court in that case, and after reviewing the jurisprudence on the subject, and after stating facts, such as the sudden running of children from behind parked automobiles, and which would relieve a motorist of negligence, goes on to hold (160 So. 467, page 468): "But, when children are seen on the side of a road, an approaching motorist must anticipate childish actions, as, for

example, the sudden running across the road, even when they are accompanied by their elders holding them by the hand. Jacoby v. Gallaher, 12 La.App. 477, 126 So. 86. In a word, the presence of children on or near a highway imposes upon a motorist the duty of exercising extraordinary care and every reasonable precaution must be taken to avoid injuring them. Children and adults whose infirmities are apparent or known to the motorist, 'the lame, the halt and the blind,' the aged and intoxicated, are properly the subject of public solicitude, and the law requires that those who operate such dangerous instrumentalities as automobiles in their vicinity must do so with the utmost care. Jacoby v. Gallaher, supra; Burvant v. Wolfe, 126 La. 787, 791, 52 So. 1025, 29 L.R.A.(N.S.) 677; Santos v. Duvic, 16 La.App. 105, 133 So. 399; Brown v. Wade (La.App.) 145 So. 790; Baptiste v. Mateu (La.App.) 147 So. 731."

The child in our case was a little negro child of 11 years old, of small stature, and in only the first grade, showing her mental development to be nil.

Applying these decisions to the facts of this case, and having in mind what our own Supreme Court has decided and all text-writers agree on, I am bound to conclude that the proximate cause of the death of the plaintiff's child was solely due to the failure of the driver of the truck to observe even the ordinary rules of care and caution, otherwise the child would not have been struck and killed, and that our original judgment was erroneous.

These are the views which I expressed in writing to my associates after the case was briefed and argued on the rehearing, which was unanimously granted by this court. As before stated, this court in its original opinion rejecting the demands of the plaintiff had expressed grave dubiety as to its conclusions of fact, and apparently reluctantly rejected and dismissed the plaintiff's suit.

The deciding opinion on this rehearing has added some observations to the original opinion, but has utterly failed to strike at the vitals of this case from the standpoint of the admitted and proven facts and the law applicable thereto. Irrespective of the treatment of the evidence and the law carried in the opinion from which I now dissent, there are certain facts which neither the original opinion or the present opinion can dispute or gainsay. I have adverted to these facts in the above analysis of the case, but contradiction may be easily challenged as to the following admitted facts:

1. The driver of the truck saw these children playing tag on the highway, the Main street of Church Point, coming from the direction of two schools at noontime, playing tag, and for a block or at least 200 feet before he reached them.

2. He saw that they were young, heedless, and engaged in play on the right-side of the roadway, and without slackening or diminishing his speed he bore down on them hugging the right side of the highway, some 2 or 3 feet from the ditch bank, and did not veer away from them until he was within 15 feet of the deceased child.

3. With all of these facts, and which should have been paramount in his mind, the driver took no precaution whatever to avoid an accident.

In my humble opinion, this case presents one of the strongest cases which has ever come before this or any other court for the infliction of damages on the defendant. Indeed, if punitory or smart damages were allowable under our law, this case would furnish ample justification for their infliction.

The Supreme Court in a very recent case of Rottman v. Beverly et al., 165 So. 153, granted a writ of certiorari to this very court, and reversed our opinion (162 So. 73), in a case which bears striking similarity to the instant case. In that case we held: "Her negligence [meaning negligence of plaintiff], as heretofore stated, was inexcusable, and it continued up to the very moment of the accident. Our Supreme Court has repeatedly held that under such circumstances the doctrine of 'last clear chance' does not apply."

But the Supreme Court stated, in unmistakable terms, the true rule thus: "But her negligence in that respect does not bar recovery, because the driver of the car unquestionably had the last clear chance to avert the accident by making proper use of available and adequate means. The roadway including the shoulders is about thirty feet wide. The driver had the facilities and ample time to bring the car under control. If he had done that, the space being ample he could have missed her."

A careful reading of the Rottman Case convinces me that the rule of last clear chance is plainly applicable here. Not only

that, but even under the admitted facts, the doctrine res ipsa loquitur is equally applicable. In other words, it is my deliberate judgment that the majority opinion in this case contravenes the facts and the law, and I therefore respectfully dissent.