87 So.2d 798 (1956)
Lesnor GUILLORY, Plaintiff-Appellee,
v.
Estine J. LEMOINE, Jr., Defendant-Appellant.
No. 8462.
Court of Appeal of Louisiana, Second Circuit.
May 21, 1956.
*799 Coco & Bennett, Marksville, for appellant.
A. M. D'Angelo, Alexandria, for appellee.
GLADNEY, Judge.
This action was brought by Lesnor Guillory for reimbursement of medical expenses and for personal injuries received by his minor son, Vincent Guillory, who was struck by a truck driven by the defendant. The accident occurred on December 8, 1954 about 9:30 o'clock a. m. in the City of Alexandria, Louisiana as Vincent was attempting to cross Lower Third Street after alighting from a city bus, and defendant was driving his truck westerly along said street.
After trial judgment was rendered in favor of plaintiff for the sum of $1,811.15 for expenses incurred and in the further sum of $2,500 damages on account of the injuries sustained. Lemoine was granted a devolutive appeal from the judgment and relieved of furnishing bond therefor because of his lack of means.
The charges of negligence directed against Lemoine are:
(1) Driving at an excessive, careless and reckless rate of speed within the corporate limits of the City of Alexandria; (2) Failing to keep a proper lookout and failing to have his truck under control so as to avoid striking the child; (3) Failing to sound the horn of said vehicle as defendant could have and should have seen the child at the edge of the street; (4) Failing to observe the child at the edge of the paved portion of the street just prior to the accident; (5) Failing to have the said vehicle under such control that it could be stopped or turned so as not to strike the child; (6) Failing to apply the brakes on said vehicle.
The defendant denied generally all charges of negligence and plead in the alternative the contributory negligence of the injured child and the child's father.
The evidence clearly shows defendant was not driving at an excessive, careless or reckless rate of speed, nor that his speed of twenty-five miles per hour contributed to the accident. Nor is there merit in the charge that Lemoine failed to apply the brakes upon seeing the boy in danger. The record indisputably establishes the brakes were applied and the truck skidded some twelve paces or thirty-six feet. It is admitted Lemoine did not sound the horn and his stated reason for not doing so was that when he first observed Vincent Guillory in danger he did not have an opportunity to do so. The most serious charge made is that the driver of the truck was not keeping a proper lookout, and failed to see the child at the south edge of the pavement although his view was unobstructed.
The record discloses Vincent Guillory, who was at that time nine years of age, and his brother, Donald Guillory, twelve years of age, were returning from church on a city bus. The bus was traveling east on Lower Third Street, reached the intersection with Augusta Street and came to a stop on the south side of the street. The boys got off the bus at that point which was nearly opposite their home on the north side of Lower Third Street. Lower Third Street is paved with a concrete slab eighteen feet in width and the shoulders of gravel construction are approximately four feet in width. Although Augusta *800 Street intersects from the north, it does not cross Lower Third Street. On this particular morning there had been a light drizzle and the pavement was wet, but it was not raining at the time of the accident.
Vincent Guillory testified that he and his brother, Donald, got off the bus by a fire hydrant, stood on the shoulder as the bus moved off and looked in both directions for any approaching automobiles prior to crossing the street. He said he then started across the street at a pace which he described as neither a walk nor a run that he did not see the truck before he was hit but when he reached the center line he heard Donald holler at him and turned at the moment he was hit on his left side; and that he was unconscious thereafter.
Donald Guillory stated that after the bus had discharged them and proceeded a distance of one hundred feet he looked and saw the Lemoine truck about one hundred fifty feet away, at which time Vincent started to cross the street and had reached a point approximately two feet north of the center line when he saw the truck was within five or ten feet of Vincent. Realizing the danger he yelled at his brother, who turned to run back at the instant he was struck by the left front fender of defendant's truck. The boy's body was hurled some distance through the air and rolled over to the south side of the street, a distance of about forty feet from the point of impact. Donald said he was sure of the distance traversed by the bus before Vincent attempted to cross the street as this distance was measured by his older brother and he, Donald, assisted with the measurement. The brother strangely enough refused to appear and testify despite efforts of his father and counsel to obtain his testimony.
City Police Officer Mike Fisher testified that he measured the distance from the point of impact to the spot where the boy's body was found and he also measured the skid marks made by Lemoine's truck. These began at the point of impact and extended twelve paces, or thirty-six feet.
Seated in the Chevrolet pick-up truck with the defendant were his wife and Edward Knoll, the thirteen year old brother of Mrs. Lemoine. Mrs. Lemoine was seated in the middle and Edward Knoll on the right side of the seat. They had come from their home near Marksville and were driving in a westerly direction into the City of Alexandria. Upon entering the corporate limits of the City the speed of the truck was reduced to twenty-five miles per hour. Defendant and his wife repeatedly testified without the slightest qualification that they did not see Vincent Guillory before he was struck. Both insisted they were looking straight ahead and observing a car preceding them and traveling in the same direction. They had no recollection of seeing the bus, or any other vehicle which might have prevented them from seeing Vincent Guillory at some time before he was struck. Edward Knoll testified at first that the bus was approximately opposite defendant's truck and that the injured boy ran out from behind the back of the bus, but the effect of this testimony was largely destroyed when upon cross examination the youthful witness confessed he did not actually see the injured boy run out from behind the bus, but he simply thought that this must be what happened.
Thus, there is no substantial evidence in the record to contradict the testimony of Donald Guillory to the effect he saw the truck one hundred fifty feet away when Vincent Guillory commenced his journey across the street. Of course, if Donald Guillory could see the truck from this distance like opportunity existed for the occupants of the truck to see the two boys on the shoulder of the road. It is argued, but not supported by evidence, that Vincent ran from behind the bus, and, therefore, Lemoine had no time for precautionary measures. This contention is refuted by all three of defendant's witnesses who were positive they did not see the boy even a few feet away from the point of impact. The failure to satisfactorily account for such omission convicts Lemoine of negligence in failing to see that which he should *801 have seen. Further, and since we must accept Donald Guillory's uncontradicted testimony, the defendant should have observed Vincent Guillory attempting to cross the street from a distance of more than one hundred feet, which distance afforded ample time for bringing the vehicle under control and thereby avoiding the accident.
In the recent case of Haywood v. Fidelity Mutual Insurance Co. of Indianapolis, Ind., La.App.1950, 47 So.2d 59, 61, the court declared the duty of the defendant to be:
"Under the factual set up in the instant case, the defendant Pettit had the last clear chance to avoid the accident, and even should this child be held guilty of contributory negligence the defendant violated all the rules of the road as set out by the jurisprudence of our state relative to children playing, standing, sitting or being along the public highways. This defendant is presumed to have seen what he should have seen, and under the holding in Jackson v. Cook, 189 La. 860, 181 So. 195, he should have brought his car under such control when he saw this imminent danger that the accident could have been avoided, and, also, under the many, many cases which have held that when a motorist sees a child of tender years along a highway he must bring his car under such control that an accident can be avoided regardless of any unexpected or expected action on the part of the child. See the cases cited under Guillory v. Horecky [La.App., 162 So. 89, affirmed La.App., 165 So. 159, annulled 185 La. 21, 168 So. 481], Stamps v. Henderson [La.App.1946, 25 So.2d 305]. There was absolutely nothing to prevent the defendant Pettit from seeing these children." (Citation inserted).
In Stamps v. Henderson, La.App. 1946, 25 So.2d 305, 309, this court held responsible the defendant when a nine and one-half year old girl ran into the path of defendant's automobile under circumstances which indicated the defendant saw the little girl one hundred feet away but failed to sound her horn or reduce her speed of twenty-five miles per hour. The court held the negligence of the defendant to be the proximate cause of the accident and pointed out:
"`It is true that it is negligence for a pedestrian to cross a road from behind a car heedlessly and without looking out for traffic. But in the case of children a tendency toward such heedlessness is recognized, and knowledge of it is imputed to all drivers. It is for this reason that a greater degree of care is required of them when children are seen along the road. It would be unreasonable to say that drivers are required to anticipate heedlessness on the part of children, but, if they do not, no liability attaches, because the children are contributorily negligent in being heedless.'"
It is our conclusion that defendant was negligent in failing to observe the nine year old Vincent Guillory crossing the street one hundred feet or more away. Had he been keeping a proper observation Lemoine could have sounded his horn to alert the boy to the danger, or further, Lemoine could then have taken steps to control his vehicle and avoid striking the youth even should the latter persist in his journey across the highway.
Counsel for appellant has earnestly urged as a special defense the contributory negligence of Vincent Guillory. Unquestionably Vincent Guillory was negligent, but it is equally clear Lemoine under the rulings established by the Supreme Court in Rottman v. Beverly, 1935, 183 La. 947, 165 So. 153 and Jackson v. Cook, 1938, 189 La. 860, 181 So. 195 is responsible notwithstanding the negligence of the boy. The Supreme Court commented in Jackson v. Cook, 1938, 189 La. 860, 181 So. 195, 197:
"In the Rottman case, [Rottman v. Beverly, 183 La. 947, 165 So. 153] *802 Mrs. Rottman was guilty of gross negligence which continued up to the moment of the accident. Beverly, the driver of the automobile, actually saw her in her perilous position in time to avert the accident had he used proper precautions. In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking." (Emphasis supplied.)
For the foregoing reasons we are of the opinion the decision of the trial court is correct in finding the defendant negligent and that such negligence was the proximate cause of the accident.
Concerning the question of quantum, it is our opinion that the district judge has correctly disposed of the issues therein involved and after careful examination we adopt his reasonings and conclusions in toto:
"Now passing to the question of the amount of monetary damages to be allowed, we find the following definitely established medical expenses: The hospital bill was $1,069.15, the nurses $492 and the Doctor $250, a total of $1,911.15. The statement of Dr. R. Bruce Wallace, Jr. filed in evidence in lieu of his testimony shows that Vincent Guillory suffered a traumatic pneumothorax (commonly called a collapsed lung), multiple skull fractures and a severe concussion. The child was struck on his left side with resulting injuries to his head and chest and then when he landed on the concrete pavement he, of course, was bruised and skinned severely. He was unconscious from the date of the accident, December 8th, until December 24th. He remained in the hospital with nurses on duty 24 hours a day all during that time. A catheter was placed in the chest cavity to draw blood from the collapsed lung, which expanded slowly. Vincent was released from the hospital on January 1st and returned to his home where he continued his convalescence and was able to return to school on about May 1st. According to the statement of Dr. R. Bruce Wallace, Jr., in his letter of June 28, 1955, Vincent has made very satisfactory progress considering the severe nature of his injury and the shock to which he was subjected, and the only possibility of any permanent disability is as respects the vision of the left eye. There was a severe fracture of the skull immediately above the left eye which might cause trouble in the future. There is no further medical evidence in the record regarding the possibility of permanent disability.
"On the day of the trial plaintiff testified that his son had completed his studies in the 3rd grade and that apparently he had recovered except for occasional headaches. The Court observed the injured child on the witness stand and he apparently is a normal child who had no visible permanent disability. Plaintiff stated that his child acts now about the same as he did before the accident.
"Although it is very difficult in cases of this type to determine the amount of monetary damages for such physical pain, suffering and shock, I am of the opinion that since there is very little, if any, permanent disability, an award of $2,500 is sufficient and is in line with the jurisprudence of this Court. Stevenson v. Williams [La. App.], 76 So.2d 345; Byrd v. New Amsterdam Casualty Co. [La.App.], 52 So.2d 770."
For the reasons assigned, the judgment from which appealed is affirmed.