121 So.2d 381 (1960)
Robert R. GRAY, Individually, et al.
v.
GREAT AMERICAN INDEMNITY COMPANY et al.
No. 5027.
Court of Appeal of Louisiana, First Circuit.
May 31, 1960.
*382 Taylor, Porter, Brooks, Fuller & Phillips, Robt. Vandaworker, Baton Rouge, for appellant.
Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER and LANDRY.
LANDRY, Judge ad hoc.
In this tort action plaintiff, Robert R. Gray, individually and for the use and benefit of his seven year old son, Richard Gray, seeks recovery of damages for personal injuries sustained by the child and medical expense incurred by plaintiff in the treatment thereof as the result of an accident which occurred in the City of Baton Rouge, Louisiana, in the late afternoon on May 21, 1957, when an automobile being driven by defendant Mrs. Charles J. Richard (wife of and living with her husband, Charles J. Richard) collided with a bicycle on which young Gray was riding.
The demand is against Mr. and Mrs. Richard (on the theory Mrs. Richard was engaged in a community activity at the time of the accident) and American Indemnity Company, liability insurer of the Richard automobile. In the court below judgment was rendered in favor of plaintiff and against defendants in solido, in favor of plaintiff Robert R. Gray, individually, in the sum of $867.49 and in the sum of $5,000 for the use and benefit of the minor Richard Gray. Defendants appeal suspensively from the adverse judgment and plaintiff has answered the appeal praying that the award in favor of the child Richard Gray be increased from $5,000 to $10,000.
The evidence shows the Gray home is situated in a residential area on the west side of Donmoor Street which runs north and south and the surface of which said street consists of a "blacktopped" roadway sixteen feet in width. There are no curbs, gutters or ditches on either side of the street, the lawns of the abutting property *383 owners on both the east and west sides of the street extending to the respective edges of the improved portion of the thoroughfare. The Gray residence is situated on a 100 foot lot fronting on the west side of the 500 block of Donmoor Street, the residence, therefore, facing in an easterly direction. For vehicular ingress and egress to the Gray premises, the Grays have constructed a paved driveway to the north of the residence which driveway parallels the north property line of the premises and extends easterly to the western edge of the surfaced area of Donmoor Street. Parallel to and north of the northern extremity of the Gray driveway is located a rather thick cane or bamboo hedge which extends easterly to a point 21 feet west of the western extremity of the blacktopping on the street. Since the driveway extends all the way to the traveled portion of the street and the hedge stops 21 feet west of the west edge of the blacktop surface, it follows that a motorist approaching said driveway from the north has an unobstructed view of the driveway for a distance of 21 feet beyond the end of the aforementioned hedge.
On the afternoon in question, the Gray family had returned from an out of town trip some 15 or more minutes prior to the accident which is shown to have occurred between 5:00 and 6:00 p.m. Mrs. Richard was proceeding southerly along the 500 block of Donmoor Street at an estimated speed of 20 miles per hour and as she thusly approached the Gray driveway, plaintiff's son was, at the same time, riding his bicycle out of the driveway in a westerly direction toward the street for the purpose of crossing Donmoor to visit a friend who lived in the neighborhood on the east side of Donmoor Street. It is undisputed that the child was not looking in the direction in which he was proceeding but that he was, in fact, looking back at his dog which was following his young master. Mrs. Richard observed the child emerge from behind the hedge and applied her brakes in an effort to avoid the impending collision but her efforts were in vain inasmuch as the child continued into the street and the left front bumper and fender of the Richard vehicle struck the front of the rear wheel of the bicycle in the approximate center of the surfaced area of the street. Although there is some dispute regarding the distance traveled by the Richard vehicle following the impact, we believe the evidence preponderates in favor of the conclusion Mrs. Richard brought her automobile to a halt some 11 or 12 feet south of the spot where the car and bicycle collided.
Plaintiff's demand is predicated upon the alleged negligence of Mrs. Richard in driving at an excessive rate of speed, failure to maintain a proper lookout, failure to have her vehicle under control, failure to see the cyclist in time to take evasive measures to avoid striking the child and alternatively, failure to exercise the last clear chance to avoid the accident.
In defense of the action defendant relies principally on the averment that Mrs. Richard was free of any negligence whatsoever and that the proximate cause of the accident was the negligence of the young boy who admittedly was not looking in the direction in which he was proceeding as he rode his bicycle from a private driveway onto a public street. Alternatively, defendant pleads contributory negligence on the part of the injured child.
In his written reasons for judgment the learned trial judge found in favor of plaintiff on the ground Mrs. Richard had the last clear chance to avoid the accident and failed to do so. In this regard, counsel for defendants strenuously argues our brother below erred in concluding the bicycle was traveling at a speed of three miles per hour and the Richard automobile was proceeding at the rate of 20 miles per hour and upon said findings calculated Mrs. Richard was 174 feet north of the Gray driveway at the time Richard Gray came into full view beyond the eastern edge of the hedge. Esteemed counsel further argues the trial court committed gross *384 manifest error in basing the speed of the bicycle upon hearsay testimony given by Sergeant Jones (the police officer who investigated the accident) whose evidence shows he fixed the speed of the bicycle at 3 miles per hour on the basis of a statement to that effect by one Barbara Reine, an eye witness to the accident. Counsel for defendants also contends there is no direct evidence of record concerning the speed of the bicycle and the trial judge should have rejected and disregarded the hearsay evidence on that point given by the witness Jones.
Three persons actually saw the accident occur, namely, Mrs. Richard, Barbara Reine, a 15 year old girl who was looking out of the window of her home on the east side of Donmoor Street across from the Gray residence, and little Richard Gray.
Miss Reine testified she was looking westerly across the street toward the Gray home and observed Richard pedaling his bicycle out of the driveway in the direction of the street but looking behind him at his little dog which was following the lad. She stated that at no time did Richard ever look ahead or toward the street but that rather he continued to look to his rear. Miss Reine stated she simultaneously observed the Richard automobile proceeding southerly along the street at a rather slow rate of speed and immediately became apprehensive that a collision would occur unless the child turned to look for approaching traffic. Her testimony shows her worst fears were realized for the child continued into the street without ever looking or stopping and the front end of the car struck the bicycle in the approximate center of the street. Miss Reine did not hear the noise made by the application of brakes when Mrs. Richard attempted to stop although it is undisputed that Mrs. Richard did apply her brakes and in so doing left some skid marks upon the roadway. The testimony of this witness shows that she was unable to accurately estimate the velocity of either the automobile or bicycle except to state that in her opinion the automobile was traveling at a slow rate of speed.
The testimony of young Richard Gray is substantially to the effect he was proceeding easterly out of the driveway toward the street to visit a friend who lived nearby. He frankly admitted he was looking to his rear for the purpose of ordering his pet to remain behind and not follow him. He further stated he never looked toward the street, he did not see Mrs. Richard approaching and did not recall hearing the noise of her brakes.
Mrs. Richard stated she was traveling southerly along Donmoor Street at a slow rate of speed and at a point north of the Gray driveway (her evidence does not show how far) she observed the young boy on his bicycle "pedaling furiously" toward the street and looking backward at his pet. She immediately applied her brakes and as she did so the collision occurred. We believe a fair analysis of her testimony shows she did not know exactly how fast she was traveling but that she believed she was proceeding at a speed between 15 and 20 miles per hour. Her testimony shows that the left front fender of her automobile struck the front part of the bicycle's rear wheel virtually in the center of the street. Upon stopping her car she immediately proceeded toward the child who was lying on the lawn of the premises across the street entangled in his bicycle some 20 feet from the point of impact.
Plaintiff Robert R. Gray testified he and his family had returned from an out of town visit approximately 15 minutes prior to the accident. At the time of the collision, plaintiff and his wife were in the rear of their home and were attracted to the scene by the noise made by the tires of the automobile when Mrs. Richard applied her brakes. He immediately ran to the front of the house and found his son lying on the lawn of the house across the street. Mr. Gray forthwith picked up his son, carried him into the house and thereafter to the hospital. Gray stated that upon returning home previous to the accident *385 there were no skid marks on the surface of the street in the vicinity of his driveway but that at the time he picked up his son and upon subsequent examination of the scene he observed two sets of skid marks, the first being approximately 30 feet in length and commencing opposite the driveway of the Hughes home which adjoins the Gray residence on the north. According to Gray the first set of skid marks ended and that there was then a break or gap in the tire marks for a distance of approximately 15 feet following which other tire marks appeared and extended southerly a distance of some sixteen feet. At this juncture we deem it advisable to state that Gray's testimony in this regard is corroborated by that of one Thomas H. Straughan, an employee of Gray, who accompanied Gray and another individual to the scene two days following the accident for the purpose of taking pictures and measurements. We also consider this the appropriate place to point out that both Mr. and Mrs. Gray testified that in the hospital on the day of the accident Mrs. Richard told them in the presence of a Mrs. Gould that she, Mrs. Richard, was sorry but that she saw the child and thought he would stop so she proceeded along her way and when she realized the boy would not stop it was too late and the collision occurred. To complete the evidence relative to the statement attributed to Mrs. Richard we point out that the Grays were corroborated therein by the testimony of Mrs. Gould, a friend of the family, whereas the testimony of Mrs. Richard is to the effect she did not recall having made such a statement.
A. W. Jones, Jr., a city police sergeant, testified he was summoned to investigate the accident and arrived upon the scene shortly after its occurrence and before the Richard automobile was moved. He observed skid marks on the roadway measuring 34 feet in length commencing north of the Gray driveway. He found that the automobile traveled 11 feet after the point of impact. From physical evidence consisting of dirt and debris on the roadway, he established the point of impact in the exact center of the street.
The contention of learned counsel for defendant that the trial court committed manifest error in basing the speed of the bicycle upon the hearsay testimony given by Sergeant Jones is set forth in the following language taken from defendant's brief.
"The trial judge reached the conclusion that Mrs. Richard had the last clear chance to avoid the collision. The critical part of the trial judge's opinion was as follows:
"The significant facts are that Mrs. Richard was traveling about 20 miles per hour and the boy on the bicycle was traveling about 3 miles per hour, that the boy when struck had traveled in full view 21 feet on the driveway and about 8 feet on the pavement to the middle of the street before his bicycle was struck on the rear wheel. Mrs. Richard was moving at least six times faster than the boy, which would place her car 174 feet north of the Gray driveway when the boy and his bicycle came into full view at the end of the hedge. Mrs. Richard frankly acknowledges that she saw the boy on the bicycle from the time he passed the hedge and that he was looking back over his shoulder, presumably over his right shoulder, at a dog which was following the bicycle and she is certain that the boy never saw her, as he never turned his face toward her, at any time. * * *" (Italics added).
The key to the erroneous holding of the trial court lies in the words "and the boy on the bicycle was traveling about 3 miles per hour." Where is the probative evidence upon which this statement was based? There is none. The only mention in the record anywhere of this figure of 3 miles per hour was a gratuitous statement of pure hearsay elicited by counsel for plaintiff *386 during the cross-examination of Sgt. Jones. Sgt. Jones attributed this estimate of speed to Miss Barbara Reine. Yet Miss Reine testified at the trial and refused to make any estimates of speeds and distances. The testimony of Sgt. Jones has no probative value whatever and should have been entirely disregarded by the trial court. It was grievous error for the Court to base its decision on a bit of rank hearsay such as this."
We note with considerable interest that although defendant vigorously maintains the trial court erred in accepting the hearsay evidence above referred to, learned counsel for defendant has cited no authority in support of such contention. We also note with more than passing interest that no objection to said evidence was offered or made during the course of the trial. Our own research upon the issue has failed to reveal the existence of jurisprudence of our own courts decisive of the question presented. We do find, however, that the weight of authority is adverse to defendant's contention.
In American Jurisprudence, Volume 20, Evidence, Chapter VII, Section 452, Page 401, we find the following:
"Regardless of the sweeping terms in which hearsay testimony is condemned, it is not to be denied that such testimony may be relevant and material. In fact, the general rule to which only a small minority of jurisdictions take exception is that hearsay testimony admitted without objection may properly be considered and given its natural probative effect."
To the same effect see also annotation Volume 104, American Law Reports, Page 1130 and cases therein cited.
Defendant having failed to make timely objection to the evidence in question may not urge its inadmissibility upon appeal. Under the circumstances, the trial judge was not required to disregard the evidence in question and he could very properly attribute thereto such probative value as is reasonable and proper in view of the evidence as a whole.
Considering the record before us in its entirety we find no manifest error in the conclusion of the trial court. Conceding, for the sake of argument only, the trial court erred in establishing the speed of the bicycle solely upon the hearsay evidence of Sergeant Jones, we find other evidence in the record upon which liability of defendant may be predicated under the last clear chance doctrine.
We disagree with the statement of learned counsel for defendant to the effect the testimony of plaintiff Gray regarding the existence of two sets of skid marks is without corroboration. On this crucial issue, Gray's testimony is confirmed by that of his employee Straughan who accompanied Gray to the scene two days after the accident on which occasion pictures and measurements were taken. In addition certain photographs introduced in evidence (particularly Exhibit P-2) clearly reveal the presence of two sets of tire markings referred to by Gray. The mentioned photograph plainly shows one set of markings commencing in the vicinity of the driveway of plaintiff's neighbor, and the break or skip therein followed by a second set of tracks all as testified to by Gray and Straughan.
Coupled with the foregoing testimony, we note the evidence of Mrs. Richard which is to the effect she was uncertain as to the distance which separated her vehicle from the driveway at the moment she first observed the child emerge from behind the hedge. She ultimately established this distance at approximately 35 feet but her testimony indicates this estimate is predicated solely upon learning from Sergeant Jones that she laid down 34 feet of skid marks before the point of impact.
In this same connection we are not unmindful of the evidence of Mr. and Mrs. Gray (albeit its confirmation by Mrs. Gould *387 and denial by defendant) to the effect Mrs. Richard told them in the hospital she observed the child but, thinking he would stop, continued on her way and only attempted to bring her car to a halt when she realized the child was unaware of her approach.
As we reconstruct the occurrence of this unfortunate accident from the record we conclude Mrs. Richard was probably driving at a speed slightly in excess of 20 miles per hour. We so conclude for the reason we believe she applied and released her brakes and had she been traveling at less than 20 miles per hour (as she testified) the first application would have so reduced the speed of her vehicle that upon her second application she would have come to a complete stop short of the point of impact instead of proceeding 11 feet beyond the point of collision as the evidence indicates.
We believe the evidence indicates with reasonable certainty that Mrs. Richard first saw the child when she was in the vicinity of the Hughes driveway approximately 100 feet north of the point of impact. We further believe she applied her brakes but for some reason released them for a short distance and then reapplied them when she reached a point approximately 40 feet north of the Gray driveway. If she did not apply her brakes as she contends, she should have done so under the circumstances.
Upon first observation of the child Mrs. Richard should have been prompted to extreme caution especially since her evidence shows that from the moment she noted the child she perceived that he was not looking toward the street. It is the settled jurisprudence of this state that a motorist observing the presence of children on or near a public thoroughfare is required to exercise caution and care not to injure them. In effect motorists are charged with knowledge that the movements of small children on or adjacent to public streets may be sudden, unexpected and unpredictable and failure to anticipate such conduct on the part of children of tender age exposes one to liability for injuries resulting therefrom. Haywood v. Fidelity Mutual Insurance Co. of Indianapolis, Ind., La.App., 47 So.2d 59, Rainwater v. Boatright, La.App., 61 So.2d 212, Walker v. Shreveport Rys. Co., La.App., 71 So.2d 683.
Had Mrs. Richard stopped upon first observing the child in the driveway, we believe the accident would not have occurred. We are not impressed with the argument of counsel for defendant who contends that had Mrs. Richard applied her brakes twice the noise of the first application would have alerted young Gray. The answer to this argument lies in the record which shows beyond any doubt the child did not hear the automobile when Mrs. Richard applied the brakes when only some 40 feet distant. It is clear that the boy neither heard nor saw the automobile at any time for the reason that all of his attention was directed toward his dog. If he were so engrossed with his pet that he did not hear the squeal of the brakes when Mrs. Richard applied them when only 40 feet away it is not reasonable to suppose his attention would have been attracted to a similar occurrence 100 feet distant.
No citation of authority is required in support of the principle that application of the doctrine of last clear chance concedes the negligence of the injured party. For this reason we pretermit all consideration of the alleged contributory negligence of the injured child.
The contention that defendant Charles J. Richard may not be held liable because at the time of the accident Mrs. Richard was engaged on a personal as distinguished from a community mission, has not been argued in defendant's brief and is, therefore, presumed abandoned.
The lower court awarded the sum of $5,000 to plaintiff for the use and benefit of the minor Richard Gray. We agree *388 with the argument of counsel for plaintiff that this award is inadequate and should be increased.
As a result of the accident Richard Gray sustained a compound fracture of the tibia and fibula of the left leg just above the ankle. Under general anesthesia the wound was enlarged to permit sterilization and proper setting of the fracture. As a result of the surgical procedure employed he has been left with a 4 inch scar on the inside of his left leg above the ankle. Following surgery his entire left leg was placed in a "long leg cast" which extended from the groin to the toes. He remained in the hospital in traction for a period of ten days following which he was allowed to return home. For six weeks following his return home he was unable to walk because of the cast and had to be carried about. During this interval he was unable to go to the bath room and had to use a urinal and bed pan. At the end of this six weeks period the long leg cast was removed and replaced with a short leg cast which extended from just below the knee to just above his toes. Upon application of the short leg cast, the lad began to get about with the aid of crutches and was thus ambulatory until August 27, 1957, on which date the short leg cast was removed and replaced by an ace bandage designed to support the injured limb. On October 22, 1957, while playing at school Richard fell and refractured the leg at the site of the original break. He was again placed in a cast which remained on the leg until December 3, 1957. Although he still complained of some pain and tenderness at the time of the trial (February, 1959) the medical evidence indicates he has had an excellent recovery.
Considering all of the circumstances of the case at bar (especially that the medical testimony shows the second fracture was attributable to the fact the original injury had not completely healed) we feel the award for the use and benefit of the minor Richard Gray should be increased from $5,000 to the sum of $7,000.
For the reasons herein assigned the judgment of the trial court is hereby amended by increasing the amount awarded in favor of plaintiff Robert R. Gray for the use and benefit of the minor Richard Gray from the sum of $5,000 to the sum of $7,000. Except as amended herein the judgment is affirmed. All costs in the lower court as well as costs of appeal to be paid by defendants.
Amended and affirmed.