ELLIS, Judge.
Plaintiff filed this suit for damages in which he alleged he was struck and injured by an automobile owned and being operated at the time by the defendant. The case was duly tried and judgment rendered awarding the plaintiff $3500.00 for pain, suffering and mental anguish resulting from his personal injuries. Special damages consisted of an allowance of $25.00 per week for 42 weeks representing lost income from employment as a musician; $150.00 for ambulance service to New Orleans for medical treatment; $96.00 for a leg brace, and $15.00 for other trips to New Orleans by private auto for medical treatment.
The defendant appealed and the plaintiff has answered the appeal seeking an increase in the award of $3500.00 for pain and suffering to the sum of $12,500.00, plus an increase in the special damages awarded in the sum of $1050.00 representing income lost from employment as a musician and special damages award for loss of wages as a construction worker which were denied by the Lower Court.
On the night of September 7, 1960 the plaintiff, a pedestrian, was injured by a 1959 Chevrolet owned and operated by Earnest Simon, the defendant. The Chevrolet was insured by Columbia Casualty Company, also made a defendant herein. The accident occurred at or very near the intersection of Zion Street, which runs generally east and west, with North 35th Street which runs generally north and south, in East Baton Rouge Parish.
The evidence established the defendant had eaten a late meal at Prince’s Steak House and as he was leaving he consented to accommodate Willie Harris, a friend, and Willie’s date, Barbara Jean Davis, previously unknown to defendant, by giving them a ride to the Green Parrot which is on the corner of Zion and North 34th Streets.
Arriving at the Green Parrot, Simon parked on the North side of Zion Street facing West, partially on the street and partially off. There is considerable dispute as to how far the rear of the Simon vehicle was from the West edge of North 35th Street. Simon testified he was about four and one-half feet west and the plaintiff testified Simon had been parked seven to eight feet west of the west edge of North 35th Street. Officer Wright, who investigated the scene about an hour after the accident testified he calculated the distance to be 42 *198 feet, using tire tracks, broken branches on adjacent bushes and Simon’s directions to determine the starting point. There is a utility pole six feet from the west edge of North 35th Street and three feet north of the north edge of Zion Street.
Willie Harris entered the Green Parrot to secure a hot sandwich for Barbara Jean Davis who remained in the auto with Simon. Ten or twenty minutes passed before Barbara went in search, learned Willie had found other friends there and was not willing to leave the bar at that time, and thus left without her date.
As she left the bar, the plaintiff, who was obviously under the influence of strong drink, called to Barbara, who knew him only indirectly. When she failed to stop he followed her outside and became threatening and abusive and tried to hit her. Barbara got into the car for protection and Simon got out to attempt to quiet Ross by talking to him at the rear of the car.
Ross agreed to go home and began walking east behind the car, intending to turn north on 35th Street at the intersection. Simon got into his car and, as he was blocked in his forward progress by another parked car, backed up.
The Chevrolet hit the utility pole, ripping the door from its hinges. The only other damage to the car was a vertical dent just forward of the hinges caused by the edge of the door being forced into the fender before it broke loose. The physical evidence established the door was open at the time of the impact as the inside of the door struck the post.
We find Simon was negligent and his negligence was the proximate cause of •the accident for two reasons. In the first place, the backing maneuver was admittedly made suddenly and at an excessive speed, sufficient to spin the tires and throw rocks. The vehicle was equipped with an unusually powerful engine and Simon stated his intention to “take-off”. Cars are made to drive, carefully, and not to fly.
The second act of negligence on the part of Simon was in failing to see what he should have seen, namely, Ross walking toward the intersection. Simon testified he was looking back over his right shoulder and his car was equipped with back-up lights. The presence or absence of a street light was not established with any degree of certainty. Simon stated he did not see Ross at all from the time Ross began walking away from the car until he saw Ross injured on North 35th Street. If Ross was behind the car, plaintiff should have seen him. The duty to see Ross in this instance was more than a duty to exercise reasonable care, as Simon knew Ross, a staggering inebriate, was in the immediate vicinity. Gray v. Great American Indemnity Company, La.App., 121 So.2d 381; Schuster v. Audubon Insurance Company, La.App., 147 So.2d 226.
Barbara Jean Davis was summoned as a witness by the plaintiff six times but despite most diligent effort, could not be located until after the judgment was signed by the trial judge. Nevertheless, her testimony was taken as a note of evidence. We believe this evidence is properly before this court under authority of Article 1972, LSA-Code of Civil Procedure. The motion for a new trial was timely filed and overruled but the defendant was given a definite time in which to produce the elusive witness. Thus, in denying the motion for a new trial, the trial judge actually, conditionally granted it. It cannot be denied she was an important witness, being an eye witness, nor can it be denied defendant diligently sought to locate the witness before the trial.
Barbara testified as the vehicle was backing up she saw Ross hanging onto the door on the right side of the car, that the door was opened and Ross had offered her money to testify in his behalf.
Accepting Barbara’s testimony as true, we still find the defendant guilty of negligence proximately causing the accident in that he was driving too fast and failed' *199 to see Ross opening the right door, even though Ross had one foot inside the car.
We agree with the finding of the learned trial judge, who stated in his reasons for judgment:
“Now, Simon doesn’t say that Ross was hanging on the door. However, he does say that he was turned around or sitting in such a position that he could look over his right shoulder and look behind the car. If he were in that position it is impossible for me to believe that Ross could have gotten to the door and hung on to it without Simon knowing it. The door was within three or four feet of Simon and it is just unreasonable that somebody could get there and hang on that door and Simon not know about it before he hit the post.”
The defendant has pleaded contributory negligence on the part of Ross. We find, however, the plaintiff was guilty of no contributory negligence. Accepting Ross’ testimony, as did the trial judge, that he heard a “skreek”, turned and was struck immediately, there can be no doubt but that Simon’s negligence was the sole cause of the accident.
Accepting Barbara’s testimony that Ross was attempting to gain entrance to the car ■ and was hanging onto the door, would require a finding of contributory negligence. The learned trial judge, who heard all the witnesses, was very emphatic that he did not believe Barbara’s testimony. He commented in his written reasons for judgment, “I would not believe this witness under three or four oaths, let alone just one.” We must, therefore, determine whether or not this finding is clearly erroneous so as to require reversal on the facts.
Counsel for the defendant contends Barbara’s testimony is not contradicted except by the testimony of the plaintiff himself, who was inebriated at the time, and that her testimony coincides with what one would expect of Ross on that occasion. Further, learned counsel argues the physical fact- that Ross was found lying under the door which had been ripped from the car by the utility pole proves Ross was on the side of the car and not behind it when he was injured.
While the testimony of Barbara is basically plausible and to some extent supported by the physical evidence, it must also be said the testimony of Ross on that point is equally plausible and equally, if not better, supported by the physical evidence. Ross was lying in the northwest quadrant of North 35th Street after the accident with the door on top of his foot. How the door, ripped from its hinges by striking the west side of a utility pole, could land east of that pole is difficult to imagine and no valid conclusions can be drawn from the fact the door landed where it did. On the other hand, Ross was found lying east of the pole in the street,. and he claims to have been struck east of the pole. This testimony is entirely consistent with the facts.
Barbara testified further Ross had one foot in the door and was hanging on the outside. This would appear to be an impossibility, as one cannot bend his lower leg under a car door and then up into the car. Conceivably, Ross could have been hanging on the end of the door with one foot inside, but this is conjecture and is not Barbara’s testimony. Had this been the case, the utility pole would have struck Ross in the back or left leg rather than striking the inside of the door and injuring the right leg.
Simon was uncertain and seemed to contradict himself as to whether or not he closed the right door when he got out of the car. Evidently he did not and the sudden backward motion of the auto swung it open in time to hit the pole. We believe the finding of fact that the plaintiff was struck by the rear of the auto and not by the door or the pole is not erroneous at all, but is supported by the best of the available evidence.
*200 The plaintiff seeks an increase in the $1050.00 representing income lost from employment as a musician. However, the difference between the amount claimed and the amount awarded is slight and not obviously erroneous. The plaintiff testified his income from this source varied from $10.00 to $35.00 per week. As the trial judge calculated, the lost income at a higher than average rate, we believe plaintiff has been allowed all he is entitled to on this item.
Plaintiff complains of the trial court’s refusal to award him a sum representing lost wages from his job as a construction worker. This item was properly disallowed as it was not adequately supported by the evidence. Ross was not a regular construction worker, evidently having no prior experience. He had worked at other jobs but the record is barren of any definite earnings to justify an award for this item. It should be noted defendant requested the plaintiff’s income tax returns and the plaintiff agreed to provide same, if he could find them. They were never produced. It must be assumed they would have been detrimental to Ross’s case to the extent of his claim for lost wages. In the absence of some convincing proof, this court will not allow an award for loss of income.
The medical testimony revealed at the time of the accident Ross was a 25 year old colored male. He suffered a supracondylar fracture of the right femur. Additionally, as a result of the accident we find the following facts:
1. He was injured on September 7, 1960 and was placed in and remained in traction from that date until the date of October 23, I960.
2. From the date of October 23, 1960, until February 25, 1961, he was in a total body cast. He was completely immobilized and bed ridden for this period of time.
3. He was in Charity Plospital from the approximate date of September 7, 1960 until the date of October 23, 1960 (In the body cast) First time to Charity Hospital.
4. He was at home in bed in the body cast from October 23, 1960 until the approximate date of February 9, 1961 when, because of his condition and infection, he had to be returned to Charity Hospital.
5. He was in Charity Hospital for the second time in the body cast from approximately February 9, 1961 until February 25, 1961.
6. He was required to use crutches from the approximate date of February 25, 1961 until September 6, 1961.
7. He was in a steel brace for his leg and back for a period of time from the approximate date of April 6, 1961 until September 6, 196Í.
We find that he suffered the following injuries:
1. Cuts, bruises, contusions and abrasions over entire body.
2. Physical pain and suffering.
3. Permanent injury to right legf and hip.
4. Permanent weakness and loss of strength of right leg.
5. Permanent disability of right leg.
6. The setting in^ of an infection, gangrene, and the causing of blood poisoning as a result of the wound and injury received in his right leg.
7. Shortening of right leg % inch.
The right knee is enlarged and Ross walks with a pronounced limp. Dr. Moody expressed an opinion that traumatic arthritis is developing and the condition will grow worse, resulting in stiffness of the knee and permanent disability.
Considering the nature and extent of plaintiff’s injuries we feel the award of *201 the lower court for pain and suffering is inadequate and should be increased to $5,000.00.[1]
Judgment should also be entered in favor of intervenor, Charity Hospital, in the amount of $1,495.10 against Earnest Simon.
As Charity Hospital did not appeal from the judgment of the lower court denying it recovery against William Ross in solido with Earnest Simon, we are powerless to grant that relief on appeal.
As amended the judgment of the lower court will be affirmed.
Affirmed.

. Insurance coverage as to one person was limited to the sum of $5,000.00. There is no testimony as to the financial responsibility of Earnest Simon.