LANDRY, Judge.
This is a personal injury action wherein plaintiff, Donovan J. Kessinger, seeks damages individually and on behalf of his five year old son, Donovan J. Kessinger, Jr., who was struck by a pickup truck owned and being operated by defendant, Lamar Ashford. After trial on the merits, our learned brother below rejected plaintiffs’ demands against Ashford and his liability insurer, State Farm Mutual Automobile Insurance Company. From said adverse determination plaintiffs have appealed.
The accident occurred at approximately 11:00 A.M., November 12, 1960, a clear, dry day, as plaintiff’s said minor son was attempting to cross Evangeline Street, which is a two-lane, east-west thoroughfare having a blacktopped surface twenty feet in width. Defendant, Ashford, was proceeding easterly along Evangeline Street in the south or eastbound lane and struck the child who was attempting to cross the street from the north side thereof to the south side for the purpose of going to a small neighborhood grocery store situated on the south side of the street. The impact occurred in defendant’s lane of travel just south of the center line of the street.
Plaintiffs maintain the accident was caused by Ashford’s negligence in driving at an excessive rate of speed under existing circumstances, failing to keep a proper lookout, failing to have his vehicle under proper control and neglecting to apply his brakes or take other precautionary measures to avoid the accident.
Defendants deny any negligence whatsoever on Ashford’s part and allege the sole proximate cause of the accident was the child’s sudden dash into the street across the path of Ashford’s vehicle which was being driven at a lawful speed and in a careful and prudent manner with due regard for the attending circumstances. Alternatively, the child’s alleged contributory negligence is pleaded in bar of recovery. In the further alternative it is contended the father was contributorily negligent in permitting his young son to wander into the street unaccompanied.
*536 The facts and circumstances attending the occurence of this unfortunate accident are relatively simple and virtually undisputed.
Defendant Ashford testified that on the day of the accident he was returning home alone from a squirrel hunt. He lived approximately 14 mile from the scene of the accident and was acquainted with the locale which, though essentially residential in character, did contain some apartment houses, stores and other commercial establishments. Ashford stated he was proceeding easterly in the south lane of travel at a speed of approximately 30 miles per hour (the record reveals the maximum legal speed to be 30 miles per hour) when he noticed the child on the north side of the street at the edge of the blacktopped surface of the roadway about 30 feet distant. Upon first seeing the child, Ashford observed the boy looking in the direction opposite to that from which Ashford was approaching and at the same time running in a slightly diagonal easterly direction toward the small grocery store situated on the opposite or south side of the street east of the point where the child was attempting to cross. The child, running fast and swinging his arms, started across the street whereupon Ashford forcefully applied his brakes and attempted to swerve his vehicle to the right in an effort to avoid striking the boy. The child, however, continued running, crossed the north or westbound lane of travel and was struck by the left front fender of defendant’s vehicle, the impact occurring in defendant’s lane of travel just to the south of the center line of the street. The force of the impact knocked the child forward approximately ten feet and defendant’s truck came to a stop virtually at the point of collision.
Ashford testified (which testimony is corroborated by certain photographs of record) there was a line of trees situated on the north side of Evangeline Street approximately five feet from the edge of the street but that he did not know where the child came from and could not state whether or not the boy emerged from behind one of these trees. In substance, he testified that when he first saw the child, the lad was at the very edge of the pavement running diagonally across the street looking in the opposite direction from which Ashford was traveling.
The accident was witnessed by one Sam E. Willis who was traveling easterly along Evangeline Street approximately two car lengths behind Ashford. Willis stated he was proceeding at between 25 and 30 miles per hour following Ashford who was driving at approximately the same speed. He saw the child dash across the road and simultaneously observed Ashford apply his brakes and swerve to the right. In substance he testified that Ashford’s vehicle commenced stopping at the same instant he, Willis, observed the presence of the boy on the side of the road. According to Willis the child was running at a fast pace and there was no opportunity for Ashford to-avoid striking the child who dashed into the street in the path of Ashford’s truck. Willis-estimated the line of trees situated on the north side of the street to be located five-feet from the street but, like Ashford, could' not state whether or not the child dashed from behind one of the trees.
Another witness, Joe R. Sayes, a motorist proceeding westerly along Evangeline Street, upon being called to testify, stated' that when he was approximately 250 feet east of the scene of the accident he observed the child on the north shoulder of the street running southerly across. When Sayes-first observed Ashford’s truck, Ashford had applied his brakes and swerved to the right. The child was running across the street as-fast as he could run and was struck by the left part of the front bumper of the truck near the left front fender. Ashford stopped his truck immediately and traveled practically no distance beyond the point of impact..
Officer James L. White of the City Police-Department testified that upon arrival at', the scene at approximately 11:10 A. M., he-observed Ashford’s 1957 Chevrolet pickup» *537 truck stopped in the eastbound traffic lane of Evangeline Street. He found 28 feet of skidmarks leading to the point where the truck stopped which point was 58 feet west of the west parallel of Elm Street, the intersecting thoroughfare immediately east of the scene of the accident. There was no physical evidence from which White could determine the precise point of impact but from the position of the truck, examination of the skidmarks and information obtained from the witnesses he fixed the point of collision at approximately six feet north of the south edge of Evangeline Street. He found no evidence of excessive speed on the part of defendant Ashford.
Alvin Doyle, Jr., accepted by stipulation as an expert automotive consultant, testified that on February 14, 1961 using a 1957 Chevrolet pickup truck equipped with a brake skid test detonator and recording fifth wheel (which devices are explained in detail in his testimony), he conducted tests at the scene of the accident to determine the “drag factor” or “co-efficient of friction” of the street. He found the drag factor to be seventy-one per cent which represented the ability to lose speed at the rate of 23 feet per second. Applying the drag factor thusly determined, he concluded that a vehicle leaving 28 feet of skid marks (the skid marks left by defendant’s truck) would be traveling approximately 36 feet per second or slightly less than 25 miles per hour.
Continuing his testimony, Doyle stated:
“A The national average reaction time at age under forty is three-quarters of a second. That would be approximate distance reaction distance of twenty-seven feet. The total distance of reaction of twenty-seven feet and the distance of braking of twenty-eight feet would he a total of fifty-five feet. The time required for that would be decimal point seven five seconds for the reaction and one point five seconds for the braking distance of twenty-eight feet which adds up to two point five seconds or two and a quarter seconds approximately.
“Q In other words, it would take an average driver two and a quarter seconds to bring his vehicle to a stop at that speed after he notices the danger ?
“A Yes, sir, at age under forty and considering the co-efficient of friction of the road surface and the assumed twenty-eight feet of skidmarks.”
In addition, Doyle stated that approximately a year preceding his testimony he conducted tests with groups of children of various ages to determine the speeds they could run a short distance of 25-30 feet from a running start. In the age bracket of five and six-year olds, he clocked about 50 children and determined the fastest average speed for the group to be 10 miles per hour or 15 feet per second.
Predicated upon the testimony of record, our esteemed colleague below found as a fact that defendant was driving 25 miles per hour and used all reasonable precautions to avoid the accident. He further concluded the proximate cause of the accident was the sudden dart of the child into the street. We cite with approval the following appearing in the trial judge’s well considered reasons for judgment appearing in the record:
“The evidence plainly shows that Ashford did all that he could reasonably do to avoid the accident after he first saw the child. The basic disputed question is whether Ashford should have seen the child sooner.
“Plaintiff suggests that the child left his back yard, crossed an open lot 70 feet deep, passed the last tree in the line, and entered the road. Plaintiff argues that Ashford would have seen the child crossing the open lot if he had maintained a proper lookout. It is to be observed that there is no evidence showing where the child was prior to his dash into the road. Plain *538 tiff's suggestion is that the child had just crossed the open lot is plausible, but it is only speculation. The child might as easily have been playing behind the tree for several minutes prior to his attempt to cross the road. In the second place, the line of trees on the north side of the road had the effect of obscuring Ashford’s view of the open lot to some extent. Finally, it is at least doubtful how much duty to inspect lots off the road the law imposes on a motorist who is meeting oncoming traffic.
“One fact stands out clearly from the evidence. Three motorists were in the block at the time of the accident. All three saw the child for the first time when the child was on the shoulder of the road running full tilt to cross. None saw where the child came from other than that he was running away from the line of trees. It was for Plaintiff to prove that Ashford should have seen the child sooner. The evidence fails to do this.”
On this appeal learned counsel for plaintiff contends the trial court erred in three respects, namely: (1) In failing to find defendant was operating his vehicle at an excessive rate of speed under the prevailing circumstances; (2) concluding defendant was keeping a proper lookout; and (3) an alleged error relating to the child’s injury which lastly asserted error it is unnecessary to consider in view of the conclusions hereinafter reached.
In support of his first contention, learned counsel for appellant relies upon LSA-R.S. 32:227 (a section of the Highway Regulatory Act) which provides in substance that no person shall operate any vehicle upon the highways of this state at other than a reasonable speed under the circumstances, or at a speed which shall endanger the persons or property of others. In this regard it is argued that defendant, being aware of the residential character of the neighborhood where the accident occurred, should have reduced his speed notwithstanding he was driving within the legal limit of thirty miles per hour.
The evidence in the case at bar preponderates in favor of the conclusion Ashford was driving approximately 25 miles per hour. As pointed out by the learned District Court, driving at 25 miles per hour in a residential district is not per se excessive, especially where the maximum rate of speed in such locale is thirty miles per hour. While there might well be other circumstances which would make a speed of 25 miles per hour excessive in a predominantly residential area having a maximum lawful limit of thirty miles per hour, the existence of such attending factors would have to be shown by plaintiff. In the case at bar we detect nothing in the record to justify the conclusion defendant’s speed was excessive. It does not appear that the area is particularly congested, or that small children are known to frequently play in or about the street, nor do we find any other circumstance of record which should have impelled defendant as a reasonably prudent motorist to reduce his speed.
In support of the contention defendant failed to maintain a proper lookout which alleged failure was a proximate cause of the accident, able counsel for appellant cites several authorities which we have examined and find clearly distinguishable on their facts.
In Hughes v. Gill, La.App., 41 So.2d 536, the motorist who was driving only 12 to 15 miles per hour and stopped within approximately three feet, nevertheless struck a child who could have been seen at a point 7 to 9 feet south of the street while the vehicle was still 50 feet distant from the point of impact. The driver did not see the child until the youngster was practically under his left front fender. The court therein rightfully held the driver could have avoided the accident had he been keeping an alert lookout and had seen the child when he should have.
*539 Haywood v. Fidelity Mut. Ins. Co. of Indianapolis, La.App., 47 So.2d 59, involves circumstances vastly different from those obtaining in the instant case. In the cited authority a group of children were gathered on the side of the highway where they could have been seen when the motorist was 1500 to 2000 feet distant.
In Griffin v. Yellow Cab Co. of Shreveport, La.App., 61 So.2d 225, a taxicab being driven at a speed of 50 to 60 miles per hour in the City of Shreveport, struck a minor pedestrian who was crossing the street at an intersection. It was further established the driver enjoyed a visibility of over 300 feet and could have seen a number of children at or near the intersection on the sidewalk and street.
In Guillory v. Lemoine, La.App., 87 So.2d 798, the injured child and his brother were standing on the shoulder of the street where they were visible from a distance of 150 feet. Notwithstanding such circumstance, a motorist, traveling at 35 miles per hour, failed to see the child before the impact.
In the instant case the record reveals that to reach the street the child was required to pass through his own back yard, enter a vacant lot 70 feet in depth and facing on the north side of Evangeline Street, cross this 70 foot lot and enter the street. It is contended defendant was negligent in not observing the child while the latter was crossing the vacant lot from which it must be concluded Ashford was not maintaining a proper lookout. The fallacy of this argument lies in the fact that the record is barren of any evidence as to the whereabouts of the child immediately preceeding his entry onto the northern shoulder of the street. Neither Ashford nor the following motorist, Willis (who was only two car lengths behind defendant), observed the child until he reached the shoulder of the road. Assuming, arguendo, the child ran across the lot and continued into the street the record is devoid of any evidence which would have required Ashford to examine vacant lots on either side of the street as he proceeded at the speed indicated. His principal obligation, in the absence of unusual or extraordinary circumstances of which he either was or should have been aware, was to direct his attention to the road ahead and its shoulders. Photographs introduced in evidence clearly indicate that whereas the row of trees on the north side of the street did not present an impenetrable screen obscuring all view of the vacant lot, nevertheless they were such that a motorist’s view thereof was not entirely clear and totally unobstructed. While the record does not so reflect with certainty, it is entirely possible the child dashed into the road from behind one of the trees while defendant was only a short distance away. Considering all the circumstances shown, we cannot conclude defendant was negligent in not detecting the presence of the child sooner than he did.
While it is settled law that a motorist is held to a high degree of care insofar as concerns small children who are or should be detected in, on or about the public streets, it is equally well established that a motorist is not the insurer of the safety of children playing or riding in the street. Rainwater v. Boatright, La.App., 61 So.2d 212. If a motorist has employed all reasonable precautions to avoid an accident and the sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is deemed unavoidable and the motorist exonerated from liability. Rainwater v. Boatright, supra; 2 Blashfield’s Cyclopedia of Automobile Law and Practice (Permanent Edition) Page 532, Sec. 1498; Rodriguez v. Abadie, La.App., 168 So. 515.
It has been repeatedly held that a motorist is not guilty of negligence proximately causing an accident and cannot be held liable when confronted with a sudden emergency created by a small child darting into the street or highway in such manner or under such circumstances that the motorist is unable to avoid the accident. Gross *540 v. Zeringue, La.App., 58 So.2d 294; Lyles v. Aetna Casualty & Surety Company, La.App., 136 So.2d 542.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.