HOOD, Judge.
This action is instituted by Joe J. Miller,’ individually and as administrator of the estate of the his minor child, Darla Gail Miller, to recover damages for personal injuries sustained by the child and for medical and other expenses incurred by plaintiff. The suit arises out of a collision between a bicycle which plaintiff’s daughter was riding and an automobile being driven by Mrs. Carrie F. Fontenot. The defendant is State Farm Mutual Automoblie Insurance Company, the liability insurer of the Fonte-not vehicle.
The case was tried by jury, and pursuant to a verdict of the jury judgment was rendered by the trial court in favor of the plaintiff, individually and in behalf of his daughter. Defendant has appealed.
The accident occurred at about 4:00 p.m. on January 8, 1963, at the intersection of Grienwich Boulevard and a street known as Columbus Circle in the City of Lake Charles. Grienwich Boulevard is a four-lane city thoroughfare which runs generally north and south. It is divided by a wide neutral ground, there being two lanes for northbound traffic on one side of this neutral ground and two lanes for southbound traffic on the other. At or near the place where the accident occurred Columbus Circle enters or connects with the west side of Grienwich Boulevard in such a manner that it forms a “T” intersection, with the boulevard forming the top or cross piece of the “T”. A concrete sidewalk runs in an east-west direction along the south side of Columbus Circle, and this sidewalk continues to the west curb of Grienwich Boulevard. Another sidewalk runs parallel to and along the west side of the boulevard, beginning at the south edge of Columbus Circle and running in a southerly direction. These two sidewalks join or cross each other at a point just southwest of the street intersection.
An open public playground about the size of a city block is located in the north *745 west quadrant of this intersection. There are no trees or structures on this playground which would prevent a motorist travelling south on the boulevard from seeing a person on a bicycle on Columbus Circle who was within 100 feet of the above mentioned intersection.
Immediately prior to the time the accident occurred, Mrs. Fontenot was driving her family-owned automobile in a southerly direction on Grienwich Boulevard at a speed of about 20 miles per hour. She let up on the accelerator and began reducing her speed when she reached the playground area. As she approached the intersection where the accident occurred she noticed plaintiffs young daughter riding a bicycle in an easterly direction on the sidewalk which runs parallel to and along the south side of Columbus Circle. Mrs. Fontenot thereupon applied her brakes and further reduced her speed, and thereafter, upon observing that the child intended to leave the sidewalk and enter the street, she brought her car to a stop with the front wheels of the automobile slightly past or south of the intersection. The bicycle then collided with the right side of the right front fender of the car. As a result of the collision the child sustained serious injuries, consisting principally of a fracture of the tibia of the right leg.
The evidence establishes that at the time the accident occurred the Fontenot car was in its left, or the easternmost, lane of traffic, that is, it was in the southbound lane of traffic which was nearest to the neutral ground or island in the center of the boulevard. The bicycle travelled across the west or outside lane of traffic of Grienwich Boulevard after it entered that thoroughfare and before it struck the Fontenot car.
One of the important factual issues presented is whether the Fontenot car had been brought to a stop before the accident occurred. Plaintiff contends that the car was moving at the time the collision occurred, while defendant contends that it previously had been brought to a complete-stop and was not moving.
Mrs. Fontenot and her daughter, who was a passenger in the car with her, testified that the Fontenot car had completely stopped before it was struck by the bicycle. The injured child did not testify, obviously because of her youth, and there were no other eyewitnesses to the accident. The evidence shows that immediately after the accident occurred the bicycle came to rest in the west lane of traffic, on the right side of the car and not more than five feet from it. The child fell and came to rest in the west lane of traffic, within ten feet of the car and to the right and toward the front of it.
The front wheel and tire of the bicycle were damaged considerably by the blow. The car was not damaged, but plaintiff’s-wife testified that she saw “a mark behind the front tire on the fender on the right,” indicating that that is the part of the car which was struck by the bicycle.
Plaintiff bases his argument that the Fontenot car was moving at the time of the accident on the fact that the front wheel and tire of the child’s bicycle were badly damaged. He argues that it is common knowledge that a slow moving bicycle-ridden by a “bantam weight seven year old girl” does not have sufficient force to do that much damage to a bicycle. Ini view of the fact that the bicycle was badly damaged and that the child sustained a serious injury we searched the record carefully to determine whether some force, other than the momentum of the bicycle, may have been partially responsible for the injury. The evidence shows clearly, however, that the bicycle ran into the side of the car, and there is nothing in the record to indicate that the bicycle was run over, that it was dragged, that it was knocked any distance, or that in any other way it was damaged by a movement of the car. The other physical facts which were established, particularly those relating to the *746 position of the child and the bicycle after the accident, and the fact that there were no scratches or marks running along the side of the car, indicate that the car was not moving at the time it was struck by the bicycle.
 After carefully considering all of the evidence, we have concluded that the mere fact that the bicycle was badly damaged is not sufficient to offset the uncon-tradicted testimony of eyewitnesses to the effect that the car had come to a complete stop before the collision occurred. We find, therefore, that the Fontenot automobile was not moving when it was struck by the bicycle.
Plaintiff contends, however, that even though Mrs. Fontenot did stop her car, she nevertheless was negligent in failing to maintain a proper lookout and in failing to sound her horn before the accident occurred.
We think the law applicable here was correctly stated in Layfield v. Bourgeois, La.App. 3 Cir., 142 So.2d 799, as follows:
“There is no dispute as to the law, it being well established in our jurisprudence that a motorist, who sees or should see children near the roadside, must exercise a high degree of care in view of the propensity of young children to dart or run into the street, heedless of their own safety. This rule implies that when a motorist sees or should see a child near the roadside, he must anticipate that the child might suddenly dart into the street. Consequently, the motorist must bring his vehicle under such control that he can avoid injuring the child, notwithstanding its youthful indiscretion. Stamps v. Henderson, La.App., 25 So. 2d 305; Hughes et al. v. Gill, La.App., 41 So.2d 536; Guillory v. Lemoine, La. App., 87 So.2d 798. On the other hand, a motorist is not an insurer of the safety of children playing near the street. If the motorist is proceeding at a lawful and reasonable speed and obeying all of the rules of the road as to proper lookout etc. he will not be held liable where a child suddenly darts or runs into his path from a concealed position in such a manner that the motorist is unable to avoid striking the child. 2 Blashfield’s Cyclopedia of Automobile Law and Practice (Permanent Edition) page 532, Sec. 1498; Rodriquez v. Abadie, La.App., 168 So. 515; McMorris, for Use of McMorris v. Graham, La.App., 176 So. 630; Rainwater v. Boatright, La.App., 61 So.2d 212; Hill v. Delta Fire & Casualty Co., La.App., 110 So.2d 743; Tyson v. Jackson, La.App., 118 So.2d 503.”
Some of the other pertinent cases in which these principles of law have been recognized and applied are: Burnaman v. LaPrairie, La.App. 3 Cir., 140 So.2d 710; Gray v. Great American Indemnity Co., La.App. 1 Cir., 121 So.2d 381; Kessinger v. Ashford, La.App. 1 Cir., 165 So.2d 534; and Lehmann v. Marquette Casualty Co., La.App. 4 Cir., 158 So.2d 246.
 We have already pointed out that Mrs. Fontenot was driving at a speed of less than 20 miles per hour as she approached the intersection where the accident occurred. We think that was a reasonable and safe speed. At some point before she reached the intersection she saw plaintiff’s daughter riding her bicycle on the sidewalk which runs parallel to and south of Columbus Circle. Although Mrs. Fontenot thought the child would remain on the sidewalk, she nevertheless took the added precaution of applying her brakes and reducing the speed of her car even more. We think this action on her part was consistent with her duty to exercise a high degree of care under the circumstances. She was about two car lengths from the bicycle when the child passed the junction of the two sidewalks, and it was at that moment that it became apparent to Mrs. Fontenot that the child intended to enter *747 or to cross the southbound lane of traffic on Grienwich Boulevard. The driver of the car thereupon immediately applied her brakes and brought her car to a stop. The accident did not occur until after the car had come to a complete stop.
The fact that Mrs. Fontenot reduced the speed of her car immediately after she first observed plaintiff’s child on the bicycle, and that thereafter she was able to bring her car to a complete stop before a collision occurred, indicates to us that she was maintaining a proper lookout and was keeping her car under proper control.
The facts in the cases of Bonvillian v. Dauphin, La.App. 4 Cir., 166 So.2d 40, and in Ferrara v. Allstate Insurance Co., La.App. 4 Cir., 152 So.2d 252 (cert. refused), are similar to those presented here. In the Bonvillian case plaintiff’s son, who had been riding his bicycle in a parking lot adjacent to a public highway, left the parking lot and ran into the side of defendant’s car on the highway. The defendant driver did not blow her horn, but she was able to bring her car to a stop an instant before the collision occurred. The court held that the defendant was free from negligence. In the Ferrara case plaintiff’s eight-year-old son had been riding his bicycle with other children within one or two feet of the curb of the street. As the defendant driver was passing them on the street without sounding her horn, the child turned into the path of her car and he was struck and injured. Under those circumstances the court concluded that since the driver of the car was driving at a reasonable speed and immediately applied her brakes when the boy rode into her path she was free from negligence.
The facts in these cases, and particularly those in the Ferrara case, are less favorable to the defendant than are the facts presented in the instant suit. Yet the defendant in each of those cases was held to be without fault. Under our established jurisprudence, therefore, it appears that Mrs. Fontenot exercised the degree of care which was required of her under the circumstances presented here.
We find no merit to plaintiff’s argument that the accident might have been avoided if Mrs. Fontenot had seen the child sooner, and thus that she was negligent in not observing the child and bicycle earlier. The record is barren of any evidence as to the whereabouts or actions of the child immediately prior to the time Mrs. Fontenot first observed her, so there are no facts which could serve as a basis for a conclusion that Mrs. Fontenot could or should have acted differently in the event she had observed the child before she did. See Kessinger v. Ashford, supra.
Also, we cannot agree with plaintiff in his argument that the driver of the automobile was negligent in failing to sound her horn when she first observed the child. The action which she did take, that is, stopping her car and yielding the right of way to the child, was or might reasonably be expected to be a much more effective way of preventing an accident than the mere sounding of her horn would have been. See Bonvillian v. Dauphin, supra.
After considering all of the evidence, we conclude that Mrs. Fontenot exercised the high degree of care required of her under the existing circumstances, and that she is free from negligence. The jury erred in concluding that there was negligence on her part and in rendering a verdict in favor of plaintiff. For these reasons, the judgment of the trial court which was based on that verdict must be reversed.
For the reasons herein assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, State Farm Mutual Automobile Insurance Company, and against plaintiff, individually and on behalf of his miner child, rejecting all of plaintiff’s demands and dismissing this suit at his costs. The *748 costs of this appeal are assessed to plaintiff-appellee.
Reversed.