SAMUEL, Judge.
Earline Williams, individually and as natural tutrix of her minor child, filed this action for damages resulting from personal *832 injuries sustained by the child when allegedly he was struck by a hearse being operated by a defendant employee. Plaintiff has appealed from a judgment rejecting her demands and dismissing her suit.
The accident occurred in the City of New Orleans. The hearse was on Erato Street traveling towards the river at the intersection of Erato and South Dorgenois Streets. Plaintiff contends the accident took place when the boy, 8 years and 11 months of age, was crossing Erato at the intersection, while the defense contention is that the boy darted from between two parked vehicles into Erato, and into the front side of the defendant hearse, before the vehicle had reached the intersection.
A total of seven witnesses testified at the trial, plaintiff, the boy who was injured, a Thomas Herrin, the driver of the hearse, another defendant employee seated in the hearse next to the driver, a Charles Rowan and the police officer who investigated the accident. As we understand the record only four of these, including the boy, were eye witnesses to the actual impact.
Plaintiff was at her home when the accident occurred and her testimony relative to that occurrence was only concerned with what happened after she had been notified thereof and arrived on the scene. The boy testified he came out of a grocery store on the corner of Erato and South Dorgenois with a package in one hand and change in the other, started to walk across Erato, and was hit about in the middle of that street; he didn’t see the hearse until after the impact. He remembered only a few of the details but he did deny walking between two vehicles in order to get into the street. Fortunately, his injuries appear to have been of a minor nature. The only other plaintiff witness was Thomas Herrin, who testified he was in the front of a garage on Erato Street adjoining the grocery store and from there saw the boy come out of the grocery. On one occasion he said the boy crossed behind a truck parked 10 or 12 feet from the comer on his side of Erato and on another occasion he testified the boy had crossed in front of the truck. But as he also testified he did not see the accident, we are doubtful that he actually saw the boy enter the street.
Although there is some conflict therein, the testimony of the two defendant employees, driver and passenger, is essentially as follows: The hearse was traveling at a speed of approximately 15 miles per hour. Vehicles were parked on both sides of Erato Street, the one closest to the South Dorge-nois intersection and to the right of the hearse, the direction from which the boy came, being about 8 feet from the corner. There were some children playing on the sidewalk in front of the grocery store whom the driver saw when he was about 30 feet away. As the hearse drew closer to, but before it had reached, the intersection the boy suddenly ran from between two vehicles into the front portion of the hearse’s right front fender. He fell backwards to the street and then got up. The hearse was immediately brought to a stop. The driver further testified there was nothing he could do to avoid the accident.
Charles Rowan was the only completely disinterested eye witness. According to his testimony, he was driving his truck on Erato towards the lake, in the direction opposite to that in which the hearse was traveling, and stopped at the intersection of South Dorgenois to let the hearse go through because vehicles parked on both sides of Erato would have made it impossible for him to pass the hearse if he had attempted to do so after crossing the intersection. He saw the boy come out of the grocery and dart between two vehicles into the side of the front right fender of the hearse. The boy came out of the store with other children with whom he was talking and with a bag in one hand and something in his other hand which was closed. Some of the children went in an opposite direction and the boy had turned “and was running backwards” while continuing to talk to the other children, ap *833 parently just before entering the open street. The boy entered Erato Street at about 8 or 10 feet from the intersection, fell backwards after the impact and then jumped up without losing either the bag or whatever was in his other hand. The hearse had been traveling at a speed of about IS miles per hour and came to a stop immediately after the impact; it did not enter the South Dorgenois intersection. The vehicle parked closest to the intersection on that side of Erato from which the boy came was about S or 8 feet from the corner and just opposite the grocery store door. There was an open distance of only about 2 feet between the right side of the hearse and the vehicles parked on that side of the street.
Understandably, at the time of trial the police officer had little or no independent recollection of the accident. In some measure his report conflicts with the testimony of the three eye witnesses other than the boy. The report indicates there were a small amount of skid marks made by the hearse, the boy had run into the path of the hearse rather than into its side and the boy had crossed at the intersection. We consider the first two apparent contradictions as immaterial. The fact that there may have been skid marks indicating a small amount of stopping distance and that the boy may have run immediately into the path of the hearse so that it could not stop in time to avoid the collision rather than into the side of the hearse could make no difference insofar as liability or nonlia-bility on the part of the defendants is concerned. And the police officer was not certain as to who had given him the information that the boy had crossed at the intersection although it is clear that he obtained that information principally from the boy himself. In any event, under all of the facts here involved the police report cannot overcome the positive testimony of the eye witnesses, particularly that of the completely disinterested witness, Rowan.
We conclude, as apparently did the trial court, that young Williams ran from between two vehicles parked to the right of the hearse, which was traveling IS miles per hour, into the front portion of the hearse’s right front fender and that this happened at a distance of at least one vehicle from the intersection and not at the intersectional crossing.
We are aware, of course, of our settled jurisprudence holding a motorist to a high degree of care when he knows, or should know, that small children are in his immediate vicinity, particularly when the children are not under the care of an older person. But a motorist is not the insurer of the safety of such children, whether or not fault exists on his part depends upon the facts and circumstances of each particular case, and the manner in which a reasonably prudent man would have acted under the same facts and circumstances is the test used in determining fault. Brown v. Liberty Mutual Insurance Co., 234 La. 860, 101 So.2d 696; Kessinger v. Ashford, La.App., 165 So.2d 534; Ferrara v. Allstate Insurance Co., La.App., 152 So.2d 252; Bloodworth v. Hutchinson, La.App., 150 So.2d 877; Schuster v. Audubon Insurance Company, La.App., 147 So.2d 226; Layfield v. Bourgeois, La.App., 142 So.2d 799; Gross v. Zeringue, La.App., 58 So.2d 294.
Here it was the sudden act of the boy in running from between parked vehicles into the moving defendant hearse which caused the accident, an accident which the defendant driver was unable to avoid. We are in agreement with the specific finding of the trial court that there was no negligence on the part of the driver of the hearse.
It is necessary that we amend and affirm the trial court judgment. Plaintiff’s original petition names only one defendant, Emily P. Charles, and alleges that the driver of the hearse was her employee. Plaintiff filed a supplemental and amended petition in which she alleges that her original petition was in error in naming Emily P. Charles as the owner of the hearse and that said hearse was in truth and in fact *834 owned by a corporation, Emily P. Charles Mortuary, Inc. The supplemental petition adds the name of Emily P. Charles Mortuary, Inc. as a party defendant. The trial court judgment, apparently inadvertently, is in favor of and mentions only one defendant, Emily P. Charles, and it should be in favor of both defendants. Accordingly, we must recast and amend that judgment so that it will be in favor of both defendants.
For the reasons assigned, the judgment appealed from is recast and amended so as to read and provide as follows: It is ordered, adjudged and» decreed that there be judgment in favor of the defendants, Emily P. Charles and Emily P. Charles Mortuary, Inc., and against the plaintiff, Earline Williams, individually and as natural tutrix of the minor child Calvin Eugene Williams, dismissing said plaintiff’s suit. As thus recast and amended the jrtdgment appealed from is affirmed; plaintiff to pay all costs in both courts.
Recast, amended and affirmed.